**Emily Joy JACKSON, Suing individually and on behalf of all other shareholders of First Federal Savings of Arkansas, F.A., similarly situated, Plaintiff,**

v.

**FIRST FEDERAL SAVINGS OF AR-KANSAS, F.A., M.R. Godwin, H. Charles Johnston, James A. Coles and George B. Tyler, Defendants.**

Nos. LR–C–86–560, LR–C–87–792 and LR–C–87–793.

United States District Court, E.D. Arkansas, W.D.

Jan. 13, 1989.

Gene Mesh, Cincinnati, Ohio, Stanley R. Wolfe, Jeanne A. Markey, Berger & Montague, Philadelphia, Pa., H. William Allen, Allen, Cabe & Lester, Little Rock, Ark., of counsel), for plaintiffs.

Richard J. Osterman, Jr., Trial Atty., Fed. Home Loan Bank Bd., Office of Gen. Counsel, Washington, D.C., for FHLB.

John M. Skrhak and Douglas E. Yeager, Berman, Fichtner & Mitchell, Dallas, Tex., John E. Pruniski, III, Phil Campbell, Hilburn, Bethune, Calhoon, Harper & Pruniski, Ltd., North Little Rock, Ark., for defendants.

Philip E. Kaplan, Kaplan, Brewer & Miller, Little Rock, Ark., for H. Charles Johnston.

Robert S. Lindsey, Wright, Lindsey & Jennings, Little Rock, Ark., for Smith Barney, Harris Upham & Co. and Prudential–Bache Securities.

Stephen Engstrom, Wilson Law Firm, Little Rock, Ark., Charles Lee Eisen, Kirkpatrick & Lockhart, Washington, D.C., for Kaplan, Smith & Associates.

## ORDER

EISELE, Chief Judge.

This is a securities fraud case brought against a federal savings and loan association and several of its officers by some of its stockholders. Now pending before the Court is a procedurally unusual dispute over plaintiff's access to documents in the hands of a federal agency, and a motion to strike. The motions will be addressed in that order.

## I. DISCOVERY MOTION

### A. Facts

In plaintiff's amended first request for production of documents, Request Number 10, she asked defendants for "[a]ll documents relating to Federal Home Loan Bank Board ["Bank Board"] examinations of First Federal or its predecessors during the relevant time period and to the present time." Defendants objected solely on the basis that

> [t]he requested documents are the property of the [Bank Board] and are furnished to the examined savings and loan for its confidential use. The applicable rules and regulations of the [Bank Board] provide that under no circumstances shall the savings and loan, or any of its directors, officers or employees, disclose or make public in any manner the requested documents or any portion thereof.... In light of the express prohibition set forth in Part 505 of the General Regulations of the [Bank Board], the Defendants OBJECT to the production of the materials sought in Request for Production of Documents No. 10.

Plaintiff then wrote to the Bank Board and asked it for copies of the requested documents. Acting pursuant to its under-

standing of the applicable regulations, the Bank Board agreed to give plaintiff certain documents, provided that plaintiff and the Court agreed to entry of a protective order to preserve the confidentiality of the materials released. Plaintiff agreed to the protective order and submitted it for the Court's approval. After defendants objected to the stipulated protective order, the Bank Board withdrew its consent in order to allow defendants an opportunity to be heard on the question of whether the Bank Board should release the requested documents. Subsequently, after defendants were heard, the Bank Board again decided to turn the documents over to plaintiff if the protective order was agreed to by plaintiff and the Court.

Defendants have filed objections to the protective order, and to the Bank Board's decision to give plaintiff the documents. Although their objection to Request Number 10 was based entirely on Bank Board regulations, defendants find these regulations less compelling when they authorize the disclosure plaintiff has requested. Now defendants argue that disclosure is barred by the Trade Secrets Act, 18 U.S.C. § 1905. In other words, defendants contend that disclosure of the requested documents to plaintiff by the defendants is prohibited by Bank Board regulations, and that disclosure of the documents to plaintiff by the Bank Board under those same regulations is prohibited by the Trade Secrets Act. Both plaintiffs and the Bank Board (via an amicus brief) have responded in opposition to those objections.

### B. Analysis

The issues raised in defendants' papers may be conveniently grouped and considered as follows: (1) Whether plaintiff's request to the Bank Board was improper. (2) A review of the applicable statutes and regulation. (3) Whether Regulation 505 is lawful authority for release of otherwise protected information. (4) Whether the Bank Board's decision to release certain documents to plaintiff is erroneous or otherwise incorrect. (5) Whether the protective order should be entered.

### 1. *Was the Inquiry Improper?*

██ In their filings on the disclosure issue, defendants have advanced various reasons why they think it was improper for plaintiff to approach the Bank Board via an FOIA request, rather than through discovery. On the one hand, defendants contend that the request violated a stay of discovery entered into by the parties pending resolution of defendants' motions to dismiss. On the other hand, defendants also complain that plaintiff has attempted to obtain relevant documents outside the channels of formal discovery and, consequently, without notice to defendants. Perhaps defendants advance a compound argument, that plaintiff should only have sought information through formal discovery, and that she should not have done any discovery because of the stay. In any event, defendants' arguments do not persuade the Court that anything improper has been done.

First of all, and leaving aside the special nature of the documents sought and of the entity holding them, there is no rule that the parties to a lawsuit may only gather evidence through the formal discovery devices created by the federal rules of civil procedure. If the individual or agency in possession of desired documents will provide access to them without resort to a subpoena or other Court backed discovery mechanisms, it is ordinarily unnecessary for the party seeking the material to take steps to compel what will be given freely. Nor is it required that one party give notice to other parties that evidence gathering outside the discovery process is being undertaken. To the extent defendants complain that plaintiff sought to obtain evidence other than through discovery, and without notice to defendants, their complaints are not well founded.

Equally unconvincing is the assertion that plaintiff violated the discovery stay. Plaintiff did no discovery. *See* Fed.R. Civ.P. 26(a) ("Parties may obtain discovery by one or more of the following methods: depositions upon oral examination or written questions; written interrogatories; production of documents or things or permis-

sion to enter upon land or other property, for inspection and other purposes; physical and mental examinations; and requests for admissions"). Plaintiff merely requested that the Court approve a protective order agreeable to both plaintiff, the party who would receive the documents, and the Bank Board, the agency which defendants describe as the owner of the documents. Given defendants' single objection to production, which was that the Bank Board would not let defendants acquiese in a request to produce, there was no reason for either plaintiff or the Bank Board to assume that defendants would voice a new objection at the time approval of the agreed order was sought. To the contrary, the objection suggested that if the Bank Board did not object to revealing the documents, neither did defendants.

### 2. Applicable Law

Defendants' objection on the merits rests on two statutes and a regulation. The statutes are the Trade Secrets Act, 18 U.S.C. § 1905 ("Section 1905") and the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"). The regulation is the Bank Board's regulation for disclosure of Board information, codified at 12 C.F.R. 505 ("Regulation 505").

Section 1905 makes it a criminal offense for an agency employee to publish, divulge, disclose, or make known

> in any manner or to any extent *not authorized by law* any information coming to him in the course of his employment or official duties or by reason of any examination or investigation made by, or return, report or record made to or filed with such department or agency or officer or employee thereof, which information concerns or relates to the trade secrets, processes, operations, style of work, or apparatus, or to the identity, confidential statistical data, amount or source of any income, profits, losses, or expenditures of any person, firm, partnership, corporation, or association.

On the face of things, at least, the documents requested of defendants and of the Bank Board may very well be covered by this statute, unless there is some provision for disclosure "authorized by law."

■ A logical place to look for disclosure authorization is the FOIA, which provides rules under which information is to be made available to the public and creates a mechanism for enforcing the agencies' duty to disclose that information. However, section 552(b)(8) states that the FOIA does not apply to matters that are "contained in or relate to examination, operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions." Thus, it seems beyond dispute that the FOIA does not compel the Bank Board to release information concerning its examinations of First Federal.

Regulation 505 governs "Availability and Character of Records." This regulation is issued "pursuant to section 552 of Title 5," and cites as additional authority for its promulgation 12 U.S.C. § 1431, 12 U.S.C. § 1437, 12 U.S.C. § 1464, and 12 U.S.C. § 1725. Regulation 505.4(a) contains a general policy statement

> *General Rule.* ... It is the policy of the Board to disclose its records to the public, even though such records may, in the Board's discretion, be exempted from disclosure by [FOIA] or by section 505.5 of this part, wherever such disclosure can be made without resulting in injury to a public or private interest intended to be protected by the foregoing statute or in a significant interference with the statutory responsibilities of the Board and the national interest.

Qualifying Bank Board's policy to disclose even FOIA exempt materials unless such disclosure is contrary to public or private interest stands section 505.5, the substantive rule at issue here:

> (a) *General rule.* Except as otherwise provided in this part, or as may be specifically authorized by the Board, information of the Board that has not been published in accordance with section 505.3 of this part and is

not available to the public through other sources will not be made available to the public or otherwise disclosed if such information is:

\* \* \* \* \* \*

(2) Contained in or related to examination, operating, or condition reports prepared by, or on behalf of, or for the use of, the [Bank] Board or a Federal Home Loan Bank, relating to the affairs of any member institution or affiliate thereof, or any other person engaged in, or proposing to engage in, the savings and loan business.

### 3. *Is Regulation 505 Lawful Authority for the Release?*

The issue framed by these provisions is straightforward and easily stated. Obviously, the FOIA has only marginal relevance. The main question is whether the Bank Board's decision to release the documents under the authority of Regulation 505 is a disclosure "authorized by law" as that phrase is used in Section 1905. In other words, assuming that the documents fall within the ambit of Section 1905, is Regulation 505 sufficient to authorize their release?

The decision which lays the foundation for resolution of this question is *Chrysler Corp. v. Brown*, 441 U.S. 281, 99 S.Ct. 1705, 60 L.Ed.2d 208 (1979), the case which brought Section 1905 "out of the closet." *General Motors Corp. v. Marshall*, 654 F.2d 294, 296 (4th Cir.1981). *Chrysler Corp.* was originally a so-called "reverse-FOIA" action in which plaintiff Chrysler sought to enjoin an agency from disclosing confidential information in response to an FOIA request (441 U.S., at 285, 99 S.Ct., at 1709), but its significance to the case at bar is its explanation of the relationship between agency disclosure regulations and Section 1905.

In support of its request for an injunction, Chrysler relied in part on the fact that the information which the agency intended to disclose was exempt from disclosure under one of the nine FOIA exemptions contained in 5 U.S.C. 552(b). The Supreme Court rejected that argument on the grounds that the FOIA is a disclosure statute which creates no rights in third parties not to have information disclosed: "[b]y its terms, subsection (b) demarcates the agency's obligation to disclose; it does not foreclose disclosure." Id., at 292, 99 S.Ct., at 1712. "We therefore conclude that Congress did not limit the agency's discretion to disclose information when it enacted the FOIA. It necessarily follows that the Act does not afford Chrysler any right to enjoin agency disclosure." Id., at 294, 99 S.Ct., at 1714. The fact that the FOIA did not prevent the agency from releasing the confidential information did not, however, dispose of Chrysler's claim that Section 1905 did prevent that release. Consequently, the Court turned to an evaluation of that statute.

Section 1905 traces its roots to an early revenue statute in which "Congress was primarily concerned with unauthorized disclosure of business information by feckless or corrupt revenue agents." 441 U.S., at 297, 99 S.Ct., at 1715. Current Section 1905, with its more general reach, was created as a result of recodification in 1948. Id., at 298–99, 99 S.Ct., at 1715–16. In *Chrysler Corp.*, as in this case, the agency relied upon a regulation as its legal authority for disclosure. Also as in this case, "the appropriate inquiry is whether [the agency's] regulations provide the 'authoriz[ation] by law' required by the statute." Id., at 301, 99 S.Ct., at 1717.

In answering that inquiry, the Court began with the proposition that "[i]t has been established in a variety of contexts that properly promulgated, substantive agency regulations have the 'force and effect of law.'" 441 U.S., at 296, 99 S.Ct., at 1714. But "[i]n order for a regulation to have the 'force and effect of law,' it must have certain substantive characteristics and be the product of certain procedural requisites." Id., at 301, 99 S.Ct., at 1717. The regulation upon which the agency wished to rely in *Chrysler Corp.* had the necessary substantive characteristics, but was not the product of the essential procedure, so it was not deemed to have the force and effect of law, and it could not serve as the

legal authorization for disclosure of materials otherwise protected by Section 1905. The question for this Court is whether Regulation 505 has those substantive characteristics and meets those procedural requisites.

First, only those regulations which are "substantive rules" can have the force and effect of law. A substantive or legislative-type rule is described as one "affecting individual rights and obligations." 441 U.S., at 302, 99 S.Ct., at 1718. The disclosure regulations in *Chrysler* "certainly affect[ed] individual rights and obligations; they govern[ed] the public's right to information in records ... and the confidentiality rights of those who submit information to [the agency]." Id., at 303, 99 S.Ct., at 1718. Similarly, Regulation 505 governs rights of public access and private confidentiality and should likewise be deemed a substantive rule.

Secondly, not all substantive rules are deemed law. "The legislative power of the United States is vested in the Congress, and the exercise of quasi-legislative authority by governmental departments and agencies must be rooted in a grant of such power by the Congress and subject to limitations which that body imposes." 441 U.S., at 302, 99 S.Ct., at 1718. "[T]he promulgation of these regulations must conform with any procedural requirements imposed by Congress. For agency discretion is limited not only by substantive, statutory grants of authority, but also by the procedural requirements which assure fairness and mature consideration of rules of general application. The pertinent procedural limitations in this case are those found in the APA." Id., at 303, 99 S.Ct., at 1718 (citation and quotation marks omitted). The relevant regulations in *Chrysler Corp.* had not been adopted in compliance with APA procedures for substantive rules. Id., at 312-16, 99 S.Ct., at 1723-25. There is no claim here that Regulation 505 was promulgated other than in accordance with the APA.

Thirdly, if the regulations are substantive in nature and adopted through proper procedure, they must clear a final hurdle:

they must be authorized by Congress. "[I]n order for such regulations to have the 'force and effect of law,' it is necessary to establish a nexus between the regulations and some delegation of the requisite legislative authority by Congress." In *Chrysler Corp.*, the Court examined the legislative and executive authority upon which the pertinent regulations were based, and found insufficient authority for their adoption: "The pertinent inquiry is whether under any of the arguable *statutory* grants of authority the [agency] disclosure regulations relied upon by [the agency] are reasonably within the contemplation of the grant of authority." 441 U.S., at 306, 99 S.Ct., at 1720. "This is not to say that any grant of legislative authority to a federal agency by Congress must be specific before regulations promulgated pursuant to it can be binding on courts in a manner akin to statutes. *What is important is that the reviewing court reasonably be able to conclude that the grant of authority contemplates the regulations issued.*" Id., at 308, 99 S.Ct., at 1720 (emphasis added).

The agency in *Chrysler Corp.* claimed that the regulations were authorized by the FOIA, by the federal "housekeeping" statute, 3 U.S.C. § 301, and by an Executive Order. As to the FOIA, the Court held that since the materials were exempt from the reach of that Act under Section 552(b), the Act could not be the basis for regulations governing their disclosure. 441 U.S., at 303-04, 99 S.Ct., at 1718-19. The Court also rejected reliance on the housekeeping statute, which was found to be "simply a grant of authority to the agency to regulate its own affairs," insufficient to allow disclosure of material otherwise protected by Section 1905.

Finally, the Executive Order was an insufficient authorization, but for reasons which bear directly on plaintiff's claim that Regulation 505 is sufficient. The problem was that the legislative basis of the Executive Order (Order 11246) was itself "somewhat obscure." 441 U.S., at 304, 99 S.Ct., at 1719. Thus, when the agency argued that "[t]he purpose of the Executive Order

is to combat discrimination in employment, and a disclosure policy designed to further this purpose is consistent with the Executive Order and an appropriate subject for regulation under its aegis," the Court replied that *"[w]ere a grant of legislative authority as a basis for [the Executive Order] more clearly identifiable, we might agree with the [agency] that this 'compatibility' gives the disclosure regulations the necessary legislative force."* Id., at 307, 99 S.Ct., at 1720. But the Court found that "the thread between these regulations and any grant of authority by the Congress is so strained that it would do violence to established principles of separation of powers to denominate these particular regulations 'legislative' and credit them with the 'binding effect of law.'" Id., at 307-8, 99 S.Ct., at 1720-1.

It should be clear that the ultimate issue in this case is whether there is sufficient statutory authorization for the Bank Board to adopt a regulation giving itself the discretion to release documents of the type plaintiff seeks. In order to resolve that question, it is necessary to look to the four statutes listed as authority for Regulation 505 (excluding the FOIA): 12 U.S.C. § 1431, 12 U.S.C. § 1437, 12 U.S.C. § 1464 and 12 U.S.C. § 1725. (The regulation also lists 12 U.S.C. § 522, but that is apparently a misprint for 5 U.S.C. § 552 (the FOIA), because 12 U.S.C. § 522 is limitation on how much money the Federal reserve banks can spend on buildings.)

Section 1431 of Title 12 grants powers and creates duties for the Federal Home Loan Banks. It gives the Bank Board certain authority, but none that seems relevant to Regulation 505 or the disclosure of examination materials.

Section 1437 is more pertinent, as it creates the Bank Board and, in subsection (a), provides that the Board "shall supervise the Federal Home Loan Banks created by this chapter, shall perform the other duties specifically prescribed by this chapter, and shall have power to adopt, amend, and require the observance of such rules, regulations, and orders as shall be necessary from time to time for carrying out the purposes of the provisions of this chapter."

Section 1464(a) is still more relevant, authorizing the Bank Board "under such rules and regulations as it may prescribe, to provide for the organization, incorporation, examination, operation, and regulation of associations to be known as "Federal Savings and Loan Associations."

Finally, Section 1725(a) creates the Federal Savings and Loan Insurance Corporation, "which shall insure the accounts of institution eligible for insurance as hereinafter provided, and shall be ... operated by [the Bank Board] under such bylaws, rules, and regulations as it may prescribe for carrying out the purposes of this subchapter." Included within the FSLIC's authority is the power to prescribe the "rules and regulations" pursuant to which an insured institution may convert from the mutual to the stock form. 12 U.S.C. § 1725(j).

Taking these last three sections together, it seems to the Court that there is sufficient nexus between what Congress has authorized the Bank Board to do and the provisions of Regulation 505 that that Regulation should be given the force and effect of law. The Board is given broad power to oversee the institutions subject to its regulation, and is expressly authorized to conduct examinations. Though the authority to collect information does not always carry with it the authority to release that information, 441 U.S., at 306, 99 S.Ct., at 1720, in this case it appears that the breadth of power delegated to the Board allows it to set the terms on which it will disclose confidential information. This conclusion is reinforced by the "compatibility" argument advanced and rejected on the facts in *Chrysler Corp.* One of the purposes of Board regulation is to eliminate fraud in the operation and, as alleged in this case, in the conversion of savings and loans. The Board believes that the ability to discretionarily release certain documents is an appropriate power for it to have in carrying out that duty. Based upon the applicable statutes, the Court agrees. *See Federal Home Loan Bank Board v. Superior Court of the State of Arizona,* 494

F.Supp. 924, 927 (D.Ariz.1980); *Colonial Savings and Loan Association v. St. Paul Fire & Marine Insurance Co.*, 89 F.R.D. 481, 484 (D.Kan.1980).

Defendants argue that none of these provisions "grant any specific regulatory powers with reference to the disclosure of information covered by the Trade Secrets Act." In *Chrysler Corp.*, in language quoted above, the Supreme Court stated as clearly as it can possibly be stated that "[t]his is not to say that any grant of legislative authority to a federal agency by Congress *must be specific* before regulations promulgated pursuant to it can be binding on courts in a manner akin to statutes." 441 U.S., at 308, 99 S.Ct., at 1720.*

### 4. *Was the Bank Board's Decision Erroneous?*

Defendants ask the Court to reject the Bank Board's findings that release of the requested documents subject to the protective order is appropriate, even if the Court finds Regulation 505 to be a valid exercise of administrative agency rulemaking. The Bank Board concluded that the information which it will release is arguably relevant to the litigation, that it is not available from other sources, that the litigation is not frivolous, and that entry of the protective order will adequately meet confidentiality concerns. Defendants argue that the public interest in maintaining confidentiality of examination reports requires that the documents not be given to plaintiff, and cite statements of the Bank Board on the importance of that consideration.

■ The first question is what standard of review should be applied. Defendants have not initiated an APA review procedure, so the APA standards are not directly applicable here. Had the Bank Board not conditioned release on entry of the protective order, it is clear that the appropriateness of the Board's decision would be none of the Court's concern. However, as re-

lease can only occur with the Court's acquiescence, there is an obligation to engage in some level of review.

Defendants would apparently have the Court make a *de novo* decision that the documents the Board proposes to release should be withheld, and this without the Court even having seen the papers. This the Court declines to do. The fact that the Board is cognizant of the importance of maintaining confidentiality except in those cases where other considerations outweigh that need does not mean that there are no instances where confidentiality considerations must give way, nor does it mean that the Board should not have the main say as to when those instances have arisen. By statute and regulation, the Board is entrusted with administering its bailiwick, including deciding when to release confidential documents. The Court will only interfere to the extent of ascertaining whether the Board's decision is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. *Cf.* 5 U.S.C. § 706(2)(A).

In order to make an informed decision, the Court will have the Bank Board submit the documents it proposes to give to plaintiff for an *in camera* inspection. The Board may deliver the papers to the Court in a confidential letter, addressed to the judge's chambers. If defendants wish to make arguments about specific documents, they may file those arguments on the same date as the documents are due to be delivered by the Board. Defendants should be able to frame any such arguments so that the content of the document to which the argument is addressed is not discernible simply from defendants' papers; consequently, defendants' arguments may be filed unsealed in the court file for this case.

### 5. *Should the Protective Order be Entered?*

■ Finally, assuming arguendo that the Bank Board has not abused its discretion in

---

* The Bank Board also argues that this Court's entry of the protective order would be authorization by law for the release, but that argument is too much of a bootstrap. The Court will only enter the protective order if it concludes that Regulation 505 is a valid exercise of administra-

tive rulemaking power, that release of these documents is appropriate and that the protective order is appropriate. Under those circumstances, the protective order will be a recognition that there is authorization for release. It will not create such authority.

deciding to allow plaintiff access to certain documents subject to entry of a protective order, the Court faces the final question of whether such an order should be entered. Defendants do not suggest that the order submitted by the Board and plaintiff does not do all that can be done to keep the documents confidential while at the same time allowing their use in the litigation. One supposes that, if the papers are to be delivered to plaintiff, defendants would rather have the order entered than not. However, in one of their earlier papers, though apparently not in their final objection to the protective order, defendants claimed that the protective order was unauthorized or improper.

There is some substance to this claim, at least so far as the Federal Rules of Civil Procedure are concerned. Rule 26(c)(7) authorizes entry of a protective order upon motion of a party or by the person from whom discovery is sought. The rule could be read literally to allow a party to request a protective order whether or not there is formal discovery involved, but it seems likely that the rule's provisions are aimed at the conditions under which discovery may be had. Nevertheless, should the Court find after its inspection that the Board is acting within its authority in releasing the documents to plaintiff, it will enter the proposed Stipulated Protective Order attached to Plaintiffs' Motion for Entry of Protective Order. The Court has the power to limit disclosure of confidential information as necessary for the ends of justice, and finds that the proposed Stipulated Protective Order serves those ends. *Cf. E.I. Du Pont De Nemours Powder Co. v. Masland,* 244 U.S. 100, 37 S.Ct. 575, 61 L.Ed. 1016 (1917) (court may limit disclosure of trade secrets by defendant).

## II. MOTION TO STRIKE

Finally, defendants have moved to strike a magazine article attached to one of plaintiffs' briefs, contending that it is defamatory and improper. The motion will be denied. Obviously, the article is of no probative value on the merits of this case, and of slight relevance on the issue concerning which it was submitted. If that is the point

of defendants' motion, defendants may consider it made. On the other hand, there is no purpose to be served by entering an order to strike.

IT IS THEREFORE ORDERED that

1) plaintiffs' motion for entry of protective order should be, and is hereby GRANTED, subject to the following proviso. Within 15 days of entry of this Order, the Federal Home Loan Bank Board shall submit to the Court for in camera inspection all documents which it proposes to turn over to plaintiffs. The Court will expeditiously rule on the propriety of releasing each document. Defendants may file any arguments as to specific documents within 15 days of entry of this Order. No documents shall be delivered to plaintiff until the Court has ruled that the document may be so delivered.

2) defendants' motion to strike should be, and is hereby, DENIED.