454

PAULA M. ROE, Plaintiff-Appellee and Cross-Appellant, v. JODELL CRADDUCK *et al.*, Defendants-Appellants and Cross-Appellees.

Fifth District   No. 5—88—0353

Opinion filed June 4, 1990.

Brocton Lockwood, of Marion, and William A. Schoreder, of Southern Illinois University School of Law, of Carbondale, for appellant Jodell Cradduck.

William J. Novick, of Fowler & Novick, of Marion, for appellee.

JUSTICE RARICK delivered the opinion of the court:
Plaintiff, Paula Roe, filed a four-count complaint in the circuit court of Williamson County against the defendants, Jodell Cradduck and Delta Health Care Support Systems Foundation. Counts I and II alleged wrongful discharge, count III sought damages for violation of "An Act to permit employees to review personnel records ***" (the

Review of Personnel Records Act) (Ill. Rev. Stat. 1987, ch. 48, par. 2001 *et seq.*), and count IV alleged invasion of privacy. Count III was voluntarily dismissed prior to trial. Pursuant to a motion by defendants, the trial court directed a verdict for defendants on the issue of punitive damages as to count IV. The jury returned a verdict for the defendants on counts I and II, and in favor of Roe on count IV, awarding her $5,000 in damages. Defendants appeal the judgment against them on count IV, and Roe cross-appeals the trial court's directed verdict on the issue of punitive damages.

Cradduck was the executive director of a day care center which was operated by Delta. Roe was hired by Cradduck as director on July 9, 1984. Beginning in January 1985, Cradduck began receiving complaints from parents and teachers that Roe was losing control and becoming hysterical with the children. Some of these complaints involved Roe's administering corporal punishment to her own two children, who were students at the day care center.

On May 2, 1985, Roe did not report to work because of illness, but dropped her children off at the center. Several hours later, she received a call from the school indicating that her children were misbehaving. Roe returned to the school and took her children out to the parking lot, where she spanked them.

Cradduck learned of the spanking incident on May 6, 1985, from Roe herself. Cradduck had met with Roe to tell her things were not working out and to give her the option of resigning. After talking with Roe, she agreed to arrange a meeting between Roe and the board of directors.

The next day, Cradduck began receiving calls from parents who were concerned that Roe had spanked their children. Evidence indicates that these calls were prompted when, in an effort to recruit support, Roe contacted her sister and another friend, who in turn contacted other parents and told them Roe was being discharged for spanking her own children. Cradduck then mailed a letter to the parents of the children enrolled in the preschool, indicating that Roe had spanked only her own children and that she had been discharged because of the incident. Cradduck was interviewed by the Southern Illinoisan newspaper for an article which appeared in the paper on May 10, 1985. In the article, Cradduck indicated that the school was not administering corporal punishment, that Roe had spanked only her own children, and that she had been discharged.

The appeal and cross-appeal in this case deal solely with count IV of the complaint, the allegation of invasion of privacy. Defendants appeal the $5,000 judgment in Roe's favor, and Roe appeals the trial

court's directed verdict on the issue of punitive damages.

■ Professor William Prosser has delineated four distinct types of invasion of privacy, and his approach has been adopted by the Restatement of Torts. The four types are: (1) intrusion on the seclusion of another (Restatement (Second) of Torts §652B, at 378 (1977)); (2) appropriation of another's name or likeness (Restatement (Second) of Torts §652C, at 380 (1977)); (3) publicity given to private life (Restatement (Second) of Torts §652D, at 383 (1977)); and (4) publicity placing a person in false light (Restatement (Second) of Torts §652E, at 394 (1977)). (See also W. Keeton, Prosser & Keeton on Torts §117 (5th ed. 1984).) The Restatement's categorization was implicitly recognized by our supreme court in *Lovgren v. Citizens First National Bank* (1989), 126 Ill. 2d 411, 534 N.E.2d 987.

Invasion of privacy was first recognized as an actionable wrong in Illinois in *Eick v. Peak Dog Food Co.* (1952), 347 Ill. App. 293, 106 N.E.2d 742. *Eick,* and the cases that followed it, dealt with the "appropriation of name or likeness" category. (See also *Annerino v. Dell Publishing Co.* (1958), 17 Ill. App. 2d 205, 149 N.E.2d 761.) Our supreme court recognized the appropriation category of invasion of privacy in *Leopold v. Levin* (1970), 45 Ill. 2d 434, 259 N.E.2d 250. The "false light" category was recognized in *Lovgren* (126 Ill. 2d at 417, 534 N.E.2d at 989). Our supreme court declined in *Lovgren* to settle the issue of whether the "intrusion on seclusion" category is actionable in Illinois, and there remains a conflict between the districts of the appellate court as to whether this cause of action is recognized. (See *Melvin v. Burling* (3d Dist. 1986), 141 Ill. App. 3d 786, 490 N.E.2d 1011 (recognizing cause of action); *Kelly v. Franco* (1st Dist. 1979), 72 Ill. App. 3d 642, 391 N.E.2d 54 (not recognizing the cause of action); *Bank of Indiana v. Tremunde* (5th Dist. 1977), 50 Ill. App. 3d 480, 365 N.E.2d 295 (impliedly recognizing cause of action); *Bureau of Credit Control v. Scott* (4th Dist. 1976), 36 Ill. App. 3d 1006, 345 N.E.2d 37 (not recognizing cause of action).) The final category of invasion of privacy, public disclosure of private facts, was recognized as a cause of action in *Midwest Glass Co. v. Stanford Development Co.* (1975), 34 Ill. App. 3d 130, 339 N.E.2d 274. It is the "public disclosure of private facts" type of invasion of privacy that we are concerned with in this case. *Midwest Glass* is the only Illinois case to date which deals specifically with this type of invasion of privacy, however, and therefore there is little guidance as to the elements of the tort.

Count IV of Roe's complaint was based on section II, paragraph A, of the day care center's Personnel Policies Manual; provisions of

the Child Care Act of 1969 (Ill. Rev. Stat. 1985, ch. 23, par. 2211 *et seq.*), and related Department of Children and Family Services (DCFS) regulations; and provisions of the Review of Personnel Records Act.

Addressing the last first, Roe relied in part on section 7(1) of the Review of Personnel Records Act, which provides that an employee's disciplinary record cannot be disclosed without his or her written consent. (Ill. Rev. Stat. 1987, ch. 48, par. 2007(1).) We need not address the merits of this argument, however, as the Review of Personnel Records Act has been declared unconstitutional. *Spinelli v. Immanuel Lutheran Evangelical Congregation, Inc.* (1987), 118 Ill. 2d 389, 515 N.E.2d 1222.

Roe also relied on DCFS's rule, subchapter e, Requirements for Licensure; Part 407, Licensing Standards for Day Care Centers. Section 407.32(c) provides that a day care facility shall maintain records on all employees. (89 Ill. Adm. Code §407.32(c) (1985).) Section 407.32(m) provides that authorized Department representatives shall have access to the records and reports and that all persons who have such access shall respect their confidential nature. (89 Ill. Adm. Code §407.32(m) (1985).) Section 407.33(a) provides that day care center personnel shall respect the confidential nature of the child and personnel records. (89 Ill. Adm. Code §407.33(a) (1985).) There are no specific provisions in either the Child Care Act or the DCFS regulations governing day care facilities which provide a private cause of action for wrongful disclosure of information contained in an employee's personnel file. Where not specifically provided for, violation of a statute will give rise to a cause of action if the plaintiff was a member of the class the statute was intended to protect and the harm plaintiff suffered resulted from a hazard the statute was meant to eliminate. (*Quinn v. Sigma Rho Chapter of Beta Theta Pi Fraternity* (1987), 155 Ill. App. 3d 231, 507 N.E.2d 1193.) Neither condition exists in this case. The Child Care Act was promulgated to protect children by regulating child care facilities. It was not designed to protect the reputations of employees of covered facilities, and the provisions of the statutes and regulations requiring confidentiality of employee records are incidental to its main purpose. Likewise, the harm Roe has allegedly suffered, injury to her reputation, did not arise from any hazard the Child Care Act was designed to eliminate. While Roe was the mother of two of the children in the facility's care, her invasion of privacy action is based on her status as an employee, and the private fact disclosed was the disciplinary action taken against her for violating the facility's rules and regulations banning corporal punishment. An in-

jury to an ex-employee's reputation is not a hazard the confidentiality section of the Act was designed to eliminate.

■ The third basis advanced in Roe's complaint was that the facility's Personnel Policies Manual provides that employee personnel records will be kept confidential. Roe maintains that she is entitled to rely on the manual and that it gives rise to a legal duty on the defendants' part not to disclose information contained in an employee's file. It is important to note that Roe is not alleging that the provisions of the manual were part of her employment contract which the defendants breached. No breach of contract argument was raised in her complaint or on appeal. Instead, she relied on the Personnel Policies Manual as a basis for her tort claim.

In *Quinn*, the court stated that internal guidelines of a voluntary unincorporated association did not provide a legal duty from which a cause of action for negligence could arise. We believe the situation here is analogous, and Roe has cited no authority holding otherwise.

■ Defendants also argue that the trial court erred in failing to dismiss count IV of Roe's complaint because it incorporated three different theories of recovery into a single count in violation of section 2—603(b) of the Civil Practice Law (Ill. Rev. Stat. 1987, ch. 110, par. 2—603(b); see also *Criscione v. Sears, Roebuck & Co.* (1978), 66 Ill. App. 3d 664, 384 N.E.2d 91), and that the trial court erred in not directing a verdict in their favor on count IV as Roe failed to show that the disclosure of information was the proximate cause of any damage to her. Having determined that Roe could not have prevailed on the merits of count IV, we need not address these arguments.

■ On her cross-appeal, Roe argues that the trial court erred in directing a verdict in favor of the defendants on the issue of punitive damages under count IV. Punitive damages may be awarded where torts are committed with fraud, actual malice, or with such gross negligence as to demonstrate a wanton disregard for the rights of others. (*Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, 384 N.E.2d 353.) There is no evidence of malice on the defendants' part, nor can it be said that they acted with wanton disregard for Roe's privacy. Both the letters to the parents and the interview with the newspaper were prompted by inquiries from parents concerned about whether Roe was administering corporal punishment to their children. It was Roe herself who first publicized the fact that she was discharged for spanking her own children when she called her sister and her friend. The defendants were simply responding to inquiries from parents to assure them that the school was not permitting the use of corporal punishment. The evidence presented, when viewed in a light most favor-

able to Roe, is insufficient to show that the defendants acted with malice or wanton disregard, and no verdict so finding could be permitted to stand. Therefore, the trial court properly directed a verdict on the claim for punitive damages. See *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504; *Del Muro v. Commonwealth Edison Co.* (1984), 124 Ill. App. 3d 473, 464 N.E.2d 772.

For the reasons set out above, we reverse the judgment of the circuit court of Williamson County with respect to the judgment in favor of Roe on count IV of her complaint and affirm the trial court's decision directing a verdict for defendants on the punitive damages claim.

Affirmed in part; reversed in part.

WELCH and GOLDENHERSH, JJ., concur.