WILLIAM K. LANDWER, Plaintiff-Appellee and Cross-Appellant, v. SCITEX AMERICA CORPORATION, Defendant-Appellant and Cross-Appellee.

First District (3rd Division)   No. 1—91—1503

Opinion filed November 18, 1992.

George F. Galland, Jr., and Jeffrey I. Cummings, both of Davis, Miner, Barnhill & Galland, of Chicago, and Jason Berger and Karen K. Burns, both of Testa, Hurwitz & Thibeault, of Boston, Massachusetts, for appellant.

Peter M. Barron, of Northbrook, for appellee.

PRESIDING JUSTICE GREIMAN delivered the opinion of the court:

Defendant, Scitex America Corporation, appeals from an order requiring it to provide its former employee, plaintiff, William K. Landwer, with certain materials pursuant to the provisions of the Review of Personnel Records Act (hereinafter the Act) (Ill. Rev. Stat. 1989, ch. 48, par. 2001 *et seq.*) notwithstanding plaintiff's execution of a general release.

Plaintiff filed a cross-appeal asserting that the trial court improperly limited the scope of the material requested under the Act and further erred in denying his request for attorney fees as provided in section 12(d)(2) of the Act (Ill. Rev. Stat. 1989, ch. 48, par. 2012).

We affirm the trial court as to both appeals.

Plaintiff was employed by defendant from 1981 to 1989. At the time of plaintiff's termination of employment, the parties were engaged in a dispute over the amount of commissions due plaintiff. Thereafter, the parties resolved their dispute and plaintiff executed an agreement dated June 7, 1989, which provides in pertinent part that plaintiff releases "any and all claims, demands, actions and causes of action which you [plaintiff] now have or might have arising from your [plaintiff's] employment with [defendant]."

On August 21, 1989, a written request was made for "copies of all of the financial records that pertain to [plaintiff's] employment" including "all contracts written by" plaintiff and "copies of all of the rest of [plaintiff's] personnel file."

Defendant provided plaintiff with the material in his personnel file, but declined to forward copies of sales contracts in which plaintiff had participated on the theory that such contracts were not "personnel documents" within the scope of the Act.

Plaintiff thereafter filed a complaint with the Director of the Illinois Department of Labor, exhausting his remedies under section 12 of the Act (Ill. Rev. Stat. 1989, ch. 48, par. 2012). In its decision, the Department of Labor concluded that it would take no further action and granted plaintiff leave to pursue other civil remedies.

The issue in controversy not having been resolved at the administrative level, plaintiff filed his complaint in the circuit court of Cook County asking the court to compel defendant to provide him with all financial records that pertain to his employment from 1987 through 1989, all contracts written by plaintiff, and all correspondence and data used to calculate his commissions. Plaintiff further alleged that the Act entitled him to receive attorney fees.

Defendant and plaintiff cross-filed motions for summary judgment. The trial court denied defendant's motion and granted plaintiff's motion in part. The trial court found that (1) the general release language contained in the letter agreement dated June 7, 1989, did not preclude plaintiff's claim and (2) defendant must produce to plaintiff copies of all sales contracts written by plaintiff, showing only the exact selling price and the date the contract was approved by defendant. The trial court also denied plaintiff's request for attorney fees.

On appeal, defendant asserts that the general release bars plaintiff's cause of action and that sales contracts are not personnel records within the scope of the Act.

On cross-appeal, plaintiff contends that the trial court erred in ordering disclosure of only some, but not all, documents requested and in failing to award plaintiff attorney fees and costs.

We must first consider whether plaintiff's right to review his personnel records is barred by the general release executed in connection with the dispute over compensation between the parties.

■■ In its definition of an "employee," the Act includes "a former employee who has terminated service within the preceding year." (Ill. Rev. Stat. 1989, ch. 48, par. 2001(a).) Accordingly, plaintiff is a member of the class whose rights the Act seeks to protect.

The Act establishes an employee's rights by providing in pertinent part:

> "Every employer shall, upon an employee's request *** permit the employee to inspect any personnel documents which are, have been or are intended to be used in determining that employee's qualifications for employment, promotion, transfer, additional compensation, discharge or other disciplinary action." Ill. Rev. Stat. 1989, ch. 48, par. 2002.

Although the instrument executed by plaintiff releases "any and all claims, demands, actions and causes of action which [he had] or might have [had] arising from [his] employment," we must take great care to determine whether such language constitutes a waiver of a statutory protection which relates to matters other than the controversy in question.

Defendant relies on the express language of the release and suggests that plaintiff's rights under the Act have been released since they are matters "arising from his employment," which was the specific language of the release.

Plaintiff, on the other hand, argues that the "rights" granted under the Act cannot be waived and that the public policy expressed in the language of the Act permitting employees to review their person-

nel records precludes the parties from prospectively contracting away such rights.

We believe that the cause of action which is the basis of the instant matter did not arise until after the execution of the release. His right to the records was not enforceable until he requested the records and a portion refused. This is particularly important since employees or former employees may make requests under the Act for reasons that have nothing to do with compensation. Employees may be faced with preparation of resumes or other matters which do not necessarily deal with controversies or confrontation between employer and employee.

■ The Act was enacted to remedy the imbalance of power between employer and employee. Before the Act, an employee could be privy to these records, which so heavily impact on his or her life, only by the kindness of the employer or through discovery in an actual case or controversy. There is a strong public policy to provide the employee rights of access to this vital data without undue burden. Some rights are so important to our citizens that they may not be prospectively waived.

■ Our courts have been unwilling to enforce releases that would prohibit a party from pursuing an antitrust claim that arose subsequent to the execution of the release but was predicated upon prior antitrust violations (*Oberweis Dairy, Inc. v. Associated Milk Producers, Inc.* (N.D. Ill. 1983), 568 F. Supp. 1096); prohibit a claim under the Federal Safety Appliance Act based on exculpatory language in a railroad pass (*Boyer v. Atchison, Topeka & Santa Fe Ry. Co.* (1967), 38 Ill. 2d 31, 230 N.E.2d 173); bar a claim under the Illinois Securities Act (*Foreman v. Holsman* (1957), 10 Ill. 2d 551, 141 N.E.2d 31); preclude liability under the Dramshop Act due to a release (*Scheff v. The Homestretch, Inc.* (1978), 60 Ill. App. 3d 424, 377 N.E.2d 305); or allow a waiver of certain rights in connection with the operation of the Funeral or Burial Funds Act (*People ex rel. Lindberg v. Memorial Consultants, Inc.* (1977), 50 Ill. App. 3d 1005, 366 N.E.2d 127). The exculpatory agreements in the above-cited cases were found to contravene or thwart public policy considerations and thus were held unenforceable.

Similarly, in considering the important public policy concerns inherent in the Act, we find that the release executed by plaintiff regarding his dispute over compensation does not act as a bar to his rights under the Act.

As noted previously, plaintiff seeks copies of contracts which he wrote and defendant declines to provide him with such material upon

its determination that the contracts are not "personnel documents" within the meaning of the Act.

Section 2 of the Act in defining "open records" provides that an employee may "inspect any personnel documents which are, have been or are intended to be used in determining that employee's qualifications for employment, promotion, transfer, additional compensation, discharge or other disciplinary action." Ill. Rev. Stat. 1989, ch. 48, par. 2002.

The documents disputed in the present case were certainly considered in determining plaintiff's continued employment and compensation to be paid by the company. While they are similarly a part of his work product and relate to the actual operation of defendant's business, they may still retain identification as a record obtainable under the Act.

When initially enacted, section 2 of the Act was complemented by section 10 (Ill. Rev. Stat. 1985, ch. 48, par. 2010) which set forth exemptions to material available for inspection by the employee. Understanding the scope of the exemptions has not been easy for Illinois courts. In *Spinelli v. Immanuel Lutheran Evangelical Congregation, Inc.* (1987), 118 Ill. 2d 389, 515 N.E.2d 1222, the Illinois Supreme Court found the exemption section so vague in defining exemptions such as "documents used for management planning" that it determined that the Act violated employer's constitutional right to due process. Section 10 was subsequently amended and reenacted by the General Assembly in Public Act 85–1393, effective September 2, 1988 (Ill. Rev. Stat. 1989, ch. 48, par. 2010), in order to harmonize the language of sections 2 and 10.[1]

For the reasons expressed here, we affirm the trial court's determination that plaintiff be allowed to examine the sales contracts.

As to plaintiff's cross-appeal, we also affirm the trial court. While ordering disclosure of copies of the sales contracts to plaintiff, the trial court declined to provide plaintiff with financial data that would be relevant to any pending claim between the employer and the employee. The Act was not meant to be a substitute for discovery in ac-

---

[1]The Illinois Department of Labor expressed concern as to possible procedural impairments connected with the reenactment of section 10 of the Act and the Illinois Attorney General thereafter rendered an opinion that the Act was enforceable because the General Assembly had the power to cure any constitutional deficiencies in the Act by amending a section without reenacting the entire Act. (1992 Ill. Att'y Gen. Op. ____, No. 92–005; but see *Roe v. Cradduck* (1990), 198 Ill. App. 3d 454, 555 N.E.2d 1155.) These issues have not been raised in the briefs of the present parties.

tual controversies, although plaintiff apparently seeks to convert it to such use.

■ Section 10(f) of the Act clearly provides exemption from such a request:

"The right of the employee or the employee's designated representative to inspect his or her personnel records does not apply to:

* * *

(f) Records relevant to any other pending claim between the employer and employee which may be discovered in a judicial proceeding." Ill. Rev. Stat. 1989, ch. 48, par. 2010.

■ We also find that the trial court properly denied plaintiff's request for attorney fees.

Section 12(d)(2) of the Act specifies that an employee prevailing in an action under the Act shall be awarded, *inter alia*, damages "[f]or a willful and knowing violation of this Act, $200 plus costs, reasonable attorney's fees, and actual damages." Ill. Rev. Stat. 1989, ch. 48, par. 2012(d)(2).

The United States Supreme Court held that a statutory violation is "willful" where the violator "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [statute]." (*Trans World Airlines, Inc. v. Thurston* (1985), 469 U.S. 111, 128, 83 L. Ed. 2d 523, 538, 105 S. Ct. 613, 625.) In *Thurston*, the Supreme Court held that the employer's violation of the Age Discrimination in Employment Act of 1967 was not willful within the meaning of the statute because the violator acted reasonably and in good faith. The *Thurston* Court observed that in a previous decision (*United States v. Illinois Central R.R. Co.* (1938), 303 U.S. 239, 82 L. Ed. 773, 58 S. Ct. 533), the party's conduct was willful "because it showed a disregard for the governing statute and an indifference to its requirements." *Thurston*, 469 U.S. at 127, 83 L. Ed. 2d at 537, 105 S. Ct. at 624.

Similarly, Illinois courts have construed the term "willful" as knowing (*Gundich v. Emerson-Comstock Co.* (1960), 21 Ill. 2d 117, 171 N.E.2d 60; *Coates v. W.W. Babcock Co.* (1990), 203 Ill. App. 3d 165, 560 N.E.2d 1099); "an intentional disregard of a known duty" (*Clarke v. Storchak* (1943), 384 Ill. 564, 580, 52 N.E.2d 229); "intentional disregard" and "a conscious indifference to the consequences of the action or inaction" (*Mathis v. Burlington Northern, Inc.* (1978), 67 Ill. App. 3d 1009, 1013, 385 N.E.2d 780); and "without any legal excuse" (*Shuff v. Fulte* (1951), 344 Ill. App. 157, 162, 100 N.E.2d 502).

In the present case, defendant produced documents contained in plaintiff's personnel file notwithstanding the release agreement executed prior to plaintiff's request under the Act. The other matters at issue in this case are of first impression and are those about which reasonable people might differ.

We believe there is no evidence of defendant's bad faith or intentional disregard of the provisions of the Act which the circuit court and now this court have interpreted to include certain sales contracts in the instant case. Accordingly, we find no willful violation of the Act and no entitlement to attorney fees.

Judgment affirmed.

TULLY and CERDA, JJ., concur.