**John P. KONVALINKA**

v.

**CHATTANOOGA–HAMILTON COUNTY HOSPITAL AUTHORITY.**

**No. E2006–00064–SC–R11–CV.**

Supreme Court of Tennessee, at Knoxville.

Feb. 13, 2008.

See also, 226 S.W.3d 280.

William T. Ramsey, Nashville, Tennessee, Jennifer H. Lawrence and Mathew D. Brownfield, Chattanooga, Tennessee, for the appellant, John P. Konvalinka.

Fred H. Moore, Joseph R. White, and James H. Payne, Chattanooga, Tennessee, for the appellee, Chattanooga–Hamilton County Hospital Authority, d/b/a Erlanger Hospital.

## OPINION

WILLIAM C. KOCH, JR., J., delivered the opinion of the court, in which WILLIAM M. BARKER, C.J., JANICE M. HOLDER, CORNELIA A. CLARK, and GARY R. WADE, JJ., joined.

This appeal involves a civil contempt proceeding originating in the Court of Appeals. The intermediate appellate court granted an interlocutory appeal to address a discovery dispute in a lawsuit between a physician and a public hospital regarding the physician's staff privileges. In its order granting the interlocutory appeal, the court stayed "all proceedings below" while the appeal was pending. Despite the stay order, one of the physician's lawyers, being represented by the other, filed suit in his own name in the Chancery Court for Hamilton County seeking access to the records involved in the discovery dispute, as well as other records, under Tennessee's public records statutes. The hospital filed a motion with the intermediate appellate court requesting that the attorneys be held in contempt for willfully disobeying its stay order. The intermediate appellate court found that the attorneys had willfully violated the stay order and, therefore, that they were in direct civil contempt. The court also ordered the attorneys to pay the hospital's attorney's fees relating to the contempt proceeding. We granted the attorneys' application for permission to appeal to determine whether the Court of Appeals properly held the attorneys in contempt. The intermediate appellate court's stay order can reasonably be interpreted to apply only to the pending legal and administrative proceedings between the physician and the hospital. Therefore, the record does not support the Court of Appeals' finding that the attorneys willfully violated its stay order when they filed the separate public records suit against the hospital.

## I.

Dr. Alexander A. Stratienko and Dr. Van Stephen Monroe are cardiologists with medical staff privileges at Erlanger Hospital in Chattanooga.[1] On September 16, 2004, they were involved in an altercation in the break room of the hospital's cardiac catheterization laboratory. Based on a report that Dr. Stratienko had "hit, pushed or shoved" Dr. Monroe, the Chattanooga–Hamilton County Hospital Authority, the owner and operator of Erlanger Hospital, summarily suspended Dr. Stratienko's staff privileges.

Dr. Stratienko retained Chattanooga lawyers, John P. Konvalinka and Jennifer H. Lawrence, to contest the suspension of his staff privileges. On September 20, 2004, the attorneys filed suit in the Circuit Court for Hamilton County against the Hospital Authority and others. The suit requested the trial court to enjoin the sus-

---

**1.** At one time, both Dr. Stratienko and Dr. Monroe were affiliated with the Chattanooga Heart Institute. However, Dr. Stratienko left the Chattanooga Heart Institute rather acrimoniously in 1998. He and Dr. Monroe are not on good terms personally or professionally. Dr. Stratienko, who claims to be the only physician in the Chattanooga area performing carotid stenting procedures, objected to Dr. Monroe's appointment to the hospital's committee for determining the credentialing for carotid stenting.

pension of Dr. Stratienko's privileges.[2] The circuit court issued an ex parte temporary restraining order prohibiting the Hospital Authority and the hospital from suspending Dr. Stratienko's staff privileges pending a hearing. Several days later, the hospital's Credentials Committee and its Medical Executive Committee reviewed the matter and decided to suspend Dr. Stratienko's privileges. In a letter dated September 27, 2004, the Hospital Authority informed Dr. Stratienko that his staff privileges would be suspended, that he would be required to apologize to Dr. Monroe, and that he would be required to be evaluated by the Tennessee Medical Foundation's Physicians Health Program. The letter also informed Dr. Stratienko of his administrative appeal rights and that the suspension would be held in abeyance pending the resolution of the temporary restraining order.

The Hospital Authority later filed a motion to dissolve the temporary restraining order and to assess monetary damages against Dr. Stratienko. The circuit court, however, declined to rule on the motion until Dr. Stratienko had an opportunity to conduct discovery. During the discovery process, Dr. Stratienko requested the Hospital Authority to provide him, among other things, with information concerning Dr. Monroe's credentials. The Hospital Authority declined to produce the requested information on the ground that it was protected from disclosure by the Tennessee Peer Review Law of 1967.[3] Dr. Stratienko filed a motion to compel the production of these records. The circuit court denied the motion but granted Dr. Stratienko permission to pursue an interlocutory appeal to the Tennessee Court of Appeals. On May 17, 2005, the Court of Appeals filed an order granting permission to appeal. The order stated that "[a]ll proceedings below, including the administrative hearing currently scheduled for June 2, 2005 are stayed pending resolution of this [i]nterlocutory [a]ppeal."[4]

On October 14, 2005, while the stay pending appeal was still in effect, Mr. Konvalinka sent a letter to the Hospital Authority requesting access to a wide variety

---

**2.** In addition to challenging the suspension of his staff privileges, Dr. Stratienko also took issue with the manner in which the hospital scheduled call coverage for cardiologists, the Hospital Authority's alleged subsidization of the Chattanooga Heart Institute and other cardiologists, and the credentialing process for Dr. Monroe. Several of Dr. Stratienko's allegations tracked earlier allegations made by the United States Department of Justice against the hospital. The Hospital Authority informed the trial court that many of the records sought by Dr. Stratienko were in the custody of the special counsel it had hired to defend against the Department of Justice's claims.

**3.** Tenn.Code Ann. § 63–6–219 (2004).

**4.** The Court of Appeals eventually determined that the circuit court had misinterpreted the Tennessee Peer Review Law. It remanded the case with directions to the circuit court to order the Hospital Authority to provide Dr. Stratienko with copies of all the requested documents that were generated in the regular course of its business or that were otherwise available from original sources. *Stratienko v. Chattanooga–Hamilton County Hosp. Auth.,* No. E2005–01043–COA–R9–CV, 2006 WL 550460, at *6 (Tenn.Ct.App. Mar.8, 2006), *perm. app. granted* (Tenn. Sept. 25, 2006). While this Court later affirmed the Court of Appeals with regard to the records generated in the normal course of the Hospital Authority's business, we disagreed with the Court of Appeals' interpretation of the scope of the Tennessee Peer Review Law and held that the Hospital Authority could not be required to produce information, documents, or records otherwise available from original sources. We held instead that this information may be obtained directly from the original sources unless it is otherwise privileged. *Stratienko v. Chattanooga–Hamilton County Hosp. Auth.,* 226 S.W.3d 280, 287 (Tenn.2007).

of hospital records under the federal Freedom of Information Act[5] and Tennessee's public records statutes.[6] In addition to the documents pertaining directly to the suspension of Dr. Stratienko's privileges, the information Mr. Konvalinka requested included documents that he had requested the Hospital Authority to produce on two occasions in 2003 before the suspension of Dr. Stratienko's privileges.[7] Mr. Konvalinka also demanded "all documents containing, referring or related to all peripheral vascular credentialing requirements in effect from the date of Dr. Monroe's initiation of the credentialing process to the present." The Hospital Authority did not respond to Mr. Konvalinka's letter.

On November 16, 2005, Mr. Konvalinka, represented by Ms. Lawrence, filed a suit in his own name in the Chancery Court for Hamilton County seeking an order requiring the Hospital Authority to provide the records sought in his October 14, 2005 letter. On November 29, 2005, the chancery court held a hearing to give the Hospital Authority an opportunity to show cause why it should not be compelled to produce the records requested by Mr. Konvalinka. The Hospital Authority argued, among other things, that it should not be required to produce the requested records because both Mr. Konvalinka's October 14, 2005 letter and his lawsuit violated the Court of Appeals' May 17, 2005 order staying "all proceedings below" pending the resolution of Dr. Stratienko's interlocutory appeal. The Hospital Authority also informed the chancery court that it had prepared, but had not yet filed, a petition to hold Mr. Konvalinka in contempt of the Court of Appeals' May 17, 2005 order. The threat of a possible contempt citation did not deter Mr. Konvalinka.

The chancery court filed its memorandum opinion and order on December 7, 2005. Noting that the May 17, 2005 stay order had been entered by the Court of Appeals, the chancery court declined to interpret or change the order and stated instead that Mr. Konvalinka could seek interpretation and clarification of the order from the Court of Appeals. It also directed the Hospital Authority to produce two of the nineteen categories of records sought by Mr. Konvalinka because they were not directly relevant to Dr. Stratienko's lawsuit against the Hospital Authority. The chancery court declined to order the Hospital Authority to release the remaining records, stating:

> Because all other requests relate, or could relate to the *Stratienko* case, the court is going to deny those requests. First, this court looks not only to the language but also the spirit of the Court of Appeals' stay order. Second, the Petitioner should be able to receive these documents through the discovery mechanisms available pursuant to the Tennessee Rules of Civil Procedure in the *Stratienko* case.

Mr. Konvalinka filed a timely notice of appeal from the chancery court's order.

On December 19, 2005, the Hospital Authority filed a motion with the Court of Appeals to have both Mr. Konvalinka and Ms. Lawrence held in contempt. While conceding that Mr. Konvalinka's petition for access to public records was a "separate cause of action," the Hospital Authority insisted that Mr. Konvalinka and Ms. Lawrence had willfully failed and refused

---

**5.** 5 U.S.C.A. § 552 (West 2007).

**6.** Tenn.Code Ann. §§ 10–7–503 to –507 (1999 & Supp.2007).

**7.** Mr. Konvalinka asserted that he had clients other than Dr. Stratienko who were interested in the information he was seeking.

to comply with and had blatantly disregarded the Court of Appeals' May 17, 2005 stay order by seeking access to records relevant to the dispute between Dr. Stratienko and the Hospital Authority under the public records statutes. The Court of Appeals eventually decided to hear and adjudicate the contempt matter contemporaneously with Mr. Konvalinka's appeal from the chancery court's December 7, 2005 order denying most of his public records requests.

On July 20, 2006, the Court of Appeals heard oral arguments regarding Mr. Konvalinka's appeal from the chancery court's denial of most of his public records requests. In an opinion filed on September 11, 2006, the court first determined that the documents Mr. Konvalinka had requested in both his 2003 letters and his October 14, 2005 letter were not covered by its May 17, 2005 stay order and, therefore, that the chancery court had properly ordered the Hospital Authority to release these two of the specific categories of records. *Konvalinka v. Chattanooga–Hamilton County Hosp. Auth.*, No. E2006–00064–COA–R3–CV, 2006 WL 2596781, at *7–8 (Tenn.Ct.App. Sept.11, 2006). The court also concluded that the chancery court had not erred by denying Mr. Konvalinka's request for attorney's fees.

The Court of Appeals then turned its attention to the Hospital Authority's contempt petition. Because there had been no evidentiary hearing on the contempt petition, the court based its decision solely on the record of the proceedings in the chancery court relating to Mr. Konvalinka's petition seeking public records. The Court of Appeals held:

Given that the 2005 documents contained requests that were *directly* covered by our stay in the *Stratienko* case, we must conclude that the Petition for Access to Public Records was nothing less than an attempt to obtain through the chancery court action documents that unquestionably could not be obtained at that time in the *Stratienko* litigation due to this Court's stay order. While our stay was in effect, clearly Konvalinka and Lawrence engaged in a deliberate attempt to do indirectly what they were prohibited from doing directly as Stratienko's attorneys. As the Chancery Court found, they made no pretense of its being otherwise.[8] Therefore, we find that Konvalinka and Lawrence are in direct civil contempt[9] of this Court's stay order.

*Konvalinka v. Chattanooga–Hamilton County Hosp. Auth.*, 2006 WL 2596781, at *8. Accordingly, the Court of Appeals remanded the case to the chancery court with directions to hold a hearing and then award the Hospital Authority its reasonable attorney's fees associated with the drafting, filing, and arguing of its contempt motion. We granted Mr. Konvalin-

8. The Court of Appeals is referring to the chancery court's observation that "[o]ften in football, if a team is going to attempt an end run, they have the fullback fake a run up the middle while the tailback goes around the end. There is little or no disguise/fake in the case at bar."

9. We presume that the Court of Appeals' characterization of Mr. Konvalinka's and Ms. Lawrence's conduct as direct civil contempt was inadvertent. Direct contempt is limited to conduct committed in the presence of the court. *Black v. Blount*, 938 S.W.2d 394, 398 (Tenn.1996); *State v. Maddux*, 571 S.W.2d 819, 821 (Tenn.1978). The filing of the petition under Tenn.Code Ann. § 10–7–505(a) seeking access to public records did not occur in the presence of the Court of Appeals and, therefore, could not have been direct contempt. In light of the basis for our decision in this case, we need not ascertain the legal effect this mischaracterization may have had on the order holding Mr. Konvalinka and Ms. Lawrence in contempt.

ka's and Ms. Lawrence's application for permission to appeal.

## II.

The power to punish for contempt has long been regarded as essential to the protection and existence of the courts and the proper administration of justice. *Winfree v. State*, 175 Tenn. 427, 431, 135 S.W.2d 454, 455 (1940); *State v. Galloway*, 45 Tenn. (5 Cold.) 326, 331 (1868). At common law, the contempt power was broad and undefined. *See Nye v. United States*, 313 U.S. 33, 43–47, 61 S.Ct. 810, 85 L.Ed. 1172 (1941). Concerned about the potential abuse of this power, the Tennessee General Assembly, like its counterparts in other states, enacted statutes to define and limit the courts' power to punish for contempt. *Black v. Blount*, 938 S.W.2d at 397. As a result, the courts' contempt power is now purely statutory. *Scott v. State*, 109 Tenn. 390, 394–95, 71 S.W. 824, 825 (1902); *State v. Galloway*, 45 Tenn. at 328–31; *State ex rel. Flowers v. Tenn. Trucking Ass'n Self Ins. Group Trust*, 209 S.W.3d 602, 611 (Tenn.Ct.App. 2006); *Derryberry v. Derryberry*, 8 Tenn. Civ.App. (Higgins) 401, 402 (1918).

Tenn.Code Ann. § 16–1–103 (1994) currently provides that "[f]or the effectual exercise of its powers, every court is vested with the power to punish for contempt, as provided for in this code."[10] To give effect to this power, Tenn.Code Ann. §§ 29–9–101 to –108 (2000) further define the scope of the contempt power and the punishment and remedies for contemptuous acts.[11] Of particular relevance to this case, Tenn.Code Ann. § 29–9–102(3) specifically empowers the courts to use their contempt powers in circumstances involving "[t]he willful disobedience or resistance of any officer of the such courts, party, juror, witness, or any other person, to any lawful writ, process, order, rule, decree, or command of such courts." This provision enables the courts to maintain the integrity of their orders. *Wilson v. Wilson*, 984 S.W.2d 898, 904 (Tenn.1998); *Thigpen v. Thigpen*, 874 S.W.2d 51, 53 (Tenn.Ct.App. 1993); *State v. Sammons*, 656 S.W.2d 862, 869 (Tenn.Crim.App.1982).

Tenn.Code Ann. § 16–1–103's broad grant of contempt power is not limited to trial courts. Accordingly, Tennessee's courts have held repeatedly that the appellate courts possess the power to punish for contempt. *Ramsey v. Mut. Supply Co.*, 221 Tenn. 437, 441, 427 S.W.2d 211, 212 (1968); *Chaffin v. Robinson*, 187 Tenn. 125, 131–32, 213 S.W.2d 32, 35 (1948); *State ex rel. Conner v. Herbert*, 127 Tenn. 220, 237–38, 154 S.W. 957, 962 (1913); *State v. Anderson*, 6 Tenn. Civ.App. (Higgins) 1, 7–8 (1915).

## III.

Civil contempt claims based upon an alleged disobedience of a court order have four essential elements. First, the order alleged to have been violated must be "lawful."[12] Second, the order alleged to have been violated must be clear, specific, and unambiguous.[13] Third, the person

---

10. This statute can be traced back to the Code of Tennessee § 4100 (Return J. Meigs & William F. Cooper eds., E.G. Eastman & Co. 1858) ("Code of 1858").

11. Tenn.Code Ann. §§ 29–9–101 to –106 can be traced back to the Code of 1858 §§ 4106–4112. Tenn.Code Ann. § 29–9–107 is derived from the Code of 1858 § 1727. Tenn.Code Ann. § 29–9–108 is of more recent vintage.

12. Tenn.Code Ann. § 29–9–102(3).

13. *Doe v. Bd. of Prof'l Responsibility*, 104 S.W.3d 465, 471 (Tenn.2003) (holding that a person cannot be held in contempt unless he or she violates a "specific order"); *Long v. McAllister–Long*, 221 S.W.3d 1, 14 (Tenn.Ct. App.2006) (holding that the order alleged to

alleged to have violated the order must have actually disobeyed or otherwise resisted the order.[14] Fourth, the person's violation of the order must be "willful." [15]

The threshold issue in any contempt proceeding is whether the order alleged to have been violated is "lawful." A lawful order is one issued by a court with jurisdiction over both the subject matter of the case and the parties. *Vanvabry v. Staton,*[16] 88 Tenn. 334, 351–52, 12 S.W. 786, 791 (1890); [17] *Churchwell v. Callens,* 36 Tenn.App. 119, 131, 252 S.W.2d 131, 136–37 (1952). An order is not rendered void or unlawful simply because it is erroneous or subject to reversal on appeal. *Vanvabry v. Staton,* 88 Tenn. at 351, 12 S.W. at 791; *Churchwell v. Callens,* 36 Tenn.App. at 131, 252 S.W.2d at 137. Erroneous orders must be followed until they are reversed. *Blair v. Nelson,* 67 Tenn. (8 Baxt.) 1, 5 (1874). However, an order entered without either subject matter jurisdiction or jurisdiction over the parties is void and cannot provide the basis for a finding of contempt. *Brown v. Brown,* 198 Tenn. 600, 610, 281 S.W.2d 492, 497 (1955); *Howell v. Thompson,* 130 Tenn. 311, 323–24, 170 S.W. 253, 256 (1914). Naturally, the determination of whether a particular order is lawful is a question of law.

The second issue involves the clarity of the order alleged to have been violated. A person may not be held in civil contempt for violating an order unless the order expressly and precisely spells out the details of compliance in a way that will enable reasonable persons to know exactly what actions are required or forbidden. *Sanders v. Air Line Pilots Ass'n Int'l,* 473 F.2d 244, 247 (2d Cir.1972); *Hall v. Nelson,* 282 Ga. 441, 651 S.E.2d 72, 75 (2007); *Marquis v. Marquis,* 175 Md.App. 734, 931 A.2d 1164, 1171 (2007); *Cunningham v. Eighth Judicial Dist. Ct. of Nev.,* 102 Nev. 551, 729 P.2d 1328, 1333–34 (1986); *Petrosinelli v. People for the Ethical Treatment of Animals, Inc.,* 273 Va. 700, 643 S.E.2d 151, 154–55 (2007). The order must, therefore, be clear, specific, and unambiguous. *See Doe v. Bd. of Prof'l Responsibility,* 104 S.W.3d at 471; *Long v. McAllister–Long,* 221 S.W.3d at 14.[18]

have been violated must be "clear and unambiguous").

14. Tenn.Code Ann. § 29–9–102(3).

15. Tenn.Code Ann. § 29–2–102(3).

16. The Tennessee Reports and West Publishing Company's South Western Reporter report this case using three different names. The style of the initial opinion contained in the Tennessee Reports is *Vanvabry v. Staton,* while the style of the initial opinion reported in the South Western Reporter is *In re Vanvaver.* The style of the opinion on petition to rehear contained in the Tennessee Reports is *State ex rel. v. Staton,* while the style of the opinion on petition to rehear in the South Western Reporter is *In re Vanvaver.* We have elected to use the style in the Tennessee Reports because it was the official reporter when the opinion was filed.

17. In an opinion responding to a petition for rehearing, the Court explained that its general reference to "jurisdiction" in its original opinion included both subject matter and personal jurisdiction. *State ex rel. v. Staton,* 88 Tenn. 353, 354, 12 S.W. 1026, 1026 (1890).

18. Other courts have applied this standard in contempt proceedings. *See, e.g., In re E.I. DuPont De Nemours & Co.—Benlate Litig.,* 99 F.3d 363, 370 (11th Cir.1996) (clear, definite, and unambiguous); *Grace v. Ctr. for Auto Safety,* 72 F.3d 1236, 1241 (6th Cir.1996) (definite and specific); *Ark. Dep't of Health & Human Servs. v. Briley,* 366 Ark. 496, 237 S.W.3d 7, 11 (Ark.2006) (definite and clear); *Blaydes v. Blaydes,* 187 Conn. 464, 446 A.2d 825, 827 (1982) (clear and unequivocal); *Rolek v. Iowa Dist. Ct. for Polk County,* 554 N.W.2d 544, 547 (Iowa 1996) (clear and definite); *Marquis v. Marquis,* 931 A.2d at 1171 (definite, certain, and specific); *Costello v. Bd. of Appeals of Lexington,* 450 Mass. 1004, 876 N.E.2d 403, 404 (2007) (clear and unequivocal); *King v. King,* 249 A.D.2d 395, 671

 Vague or ambiguous orders that are susceptible to more than one reasonable interpretation cannot support a finding of civil contempt. *City of Gary v. Major*, 822 N.E.2d 165, 170 (Ind.2005); *Judge Rotenberg Educ. Ctr., Inc. v. Comm'r of Dep't of Mental Retardation*, 424 Mass. 430, 677 N.E.2d 127, 137 (1997); *Ex parte Slavin*, 412 S.W.2d at 45. Orders need not be "full of superfluous terms and specifications adequate to counter any flight of fancy a contemner may imagine in order to declare it vague." *Ex parte Blasingame*, 748 S.W.2d 444, 446 (Tex.1988) (quoting *Ex parte McManus*, 589 S.W.2d 790, 793 (Tex.Civ.App.—Dallas 1979)). They must, however, leave no reasonable basis for doubt regarding their meaning. *Int'l Longshoremen's Ass'n, Local No. 1291 v. Phila. Marine Trade Ass'n*, 389 U.S. 64, 76, 88 S.Ct. 201, 19 L.Ed.2d 236 (1967); *Salt Lake City v. Dorman–Ligh*, 912 P.2d 452, 455 (Utah Ct.App.1996).

 Orders alleged to have been violated should be construed using an objective standard that takes into account both the language of the order and the circumstances surrounding the issuance of the order, including the audience to whom the order is addressed. *United States v. Bernardine*, 237 F.3d 1279, 1282 (11th Cir. 2001); *United States v. Young*, 107 F.3d 903, 907–08 (D.C.Cir.1997). Ambiguities in an order alleged to have been violated should be interpreted in favor of the per-

son facing the contempt charge. *Liberte Capital Group, LLC v. Capwill*, 462 F.3d 543, 551 (6th Cir.2006); *Levin v. Tiber Holding Corp.*, 277 F.3d 243, 251 (2d Cir. 2002); *Town of Virgil v. Ford*, 184 A.D.2d 901, 585 N.Y.S.2d 559, 560 (1992); *Greene v. Finn*, 153 P.3d at 951. Determining whether an order is sufficiently free from ambiguity to be enforced in a contempt proceeding is a legal inquiry that is subject to de novo review. *Davies v. Grossmont Union High Sch. Dist.*, 930 F.2d 1390, 1394 (9th Cir.1991); *In re Leah S.*, 284 Conn. 685, 935 A.2d 1021, 1027 (2007); *City of Wisconsin Dells v. Dells Fireworks, Inc.*, 197 Wis.2d 1, 539 N.W.2d 916, 924 (1995).[19]

 The third issue focuses on whether the party facing the civil contempt charge actually violated the order. This issue is a factual one to be decided by the court without a jury. *See Pass v. State*, 181 Tenn. 613, 620, 184 S.W.2d 1, 4 (1944); *Sherrod v. Wix*, 849 S.W.2d 780, 786 (Tenn.Ct.App.1992). The quantum of proof needed to find that a person has actually violated a court order is a preponderance of the evidence. *Doe v. Bd. of Prof'l Responsibility*, 104 S.W.3d at 474. Thus, decisions regarding whether a person actually violated a court order should be reviewed in accordance with the standards in Tenn. R.App. P. 13(d).

The fourth issue focuses on the willfulness of the person alleged to have violated

N.Y.S.2d 121, 122 (1998) (clear and explicit); *Ex parte Slavin*, 412 S.W.2d 43, 44 (Tex.1967) (clear, specific, and unambiguous); *Greene v. Finn*, 153 P.3d 945, 951 (Wyo.2007) (clear, specific, and unambiguous).

**19.** Tennessee's courts have not yet directly addressed this specific question. However, they have long recognized that orders and judgments should be construed like other written instruments, *State v. Phillips*, 138 S.W.3d 224, 229 (Tenn.Ct.App.2003); *Branch v. Branch*, 35 Tenn.App. 552, 555–56, 249

S.W.2d 581, 582–83 (1952), and that the interpretation of written instruments involves questions of law that are reviewed de novo without a presumption of correctness. *Barnes v. Barnes*, 193 S.W.3d 495, 498 (Tenn. 2006); *State ex rel. Pope v. U.S. Fire Ins. Co.*, 145 S.W.3d 529, 533 (Tenn.2004). Accordingly, the Court of Appeals has observed that the proper interpretation of a judgment is a question of law. *El–Amin v. Campbell*, 973 S.W.2d 222, 224 (Tenn.Ct.App.1998).

the order. The word "willfully" has been characterized as a word of many meanings whose construction depends on the context in which it appears. *Spies v. United States,* 317 U.S. 492, 497, 63 S.Ct. 364, 87 L.Ed. 418 (1943); *United States v. Phillips,* 19 F.3d 1565, 1576–77 (11th Cir.1994). Most obviously, it differentiates between deliberate and unintended conduct. *State ex rel. Flowers v. Tenn. Trucking Ass'n Self Ins. Group Trust,* 209 S.W.3d at 612. However, in criminal law, "willfully" connotes a culpable state of mind. In the criminal context, a willful act is one undertaken for a bad purpose. *Bryan v. United States,* 524 U.S. 184, 191, 118 S.Ct. 1939, 141 L.Ed.2d 197 (1998); *State v. Braden,* 867 S.W.2d 750, 761 (Tenn.Crim.App.1993) (upholding an instruction stating that "[a]n act is done willfully if done voluntarily and intentionally and with the specific intent to do something the law forbids").

 In the context of a civil contempt proceeding under Tenn.Code Ann. § 29–2–102(3), acting willfully does not require the same standard of culpability that is required in the criminal context. *State ex rel. Flowers v. Tenn. Trucking Ass'n Self Ins. Group Trust,* 209 S.W.3d at 612. Rather, willful conduct

> consists of acts or failures to act that are intentional or voluntary rather than accidental or inadvertent. Conduct is 'willful' if it is the product of free will rather than coercion. Thus, a person acts 'willfully' if he or she is a free agent, knows what he or she is doing, and intends to do what he or she is doing.

*State ex rel. Flowers v. Tenn. Trucking Ass'n Self Ins. Group Trust,* 209 S.W.3d at 612 (citations omitted). Thus, acting contrary to a known duty may constitute willfulness for the purpose of a civil contempt proceeding. *United States v. Ray,* 683 F.2d 1116, 1127 (7th Cir.1982); *City of Dubuque v. Iowa Dist. Ct. for Dubuque County,* 725 N.W.2d 449, 452 (Iowa 2006); *Utah Farm Prod. Credit Ass'n v. Labrum,* 762 P.2d 1070, 1074 (Utah 1988).[20] Determining whether the violation of a court order was willful is a factual issue that is uniquely within the province of the finder-of-fact who will be able to view the witnesses and assess their credibility. Thus, findings regarding "willfulness" should be reviewed in accordance with the Tenn. R.App. P. 13(d) standards.[21]

---

**20.** Acting contrary to a known duty is a common characteristic of willful conduct in other contexts. *United States v. Pomponio,* 429 U.S. 10, 12, 97 S.Ct. 22, 50 L.Ed.2d 12 (1976) (filing tax returns); *People v. Hagen,* 19 Cal.4th 652, 80 Cal.Rptr.2d 24, 967 P.2d 563, 567 (1998) (filing tax returns); *Landwer v. Scitex Am. Corp.,* 238 Ill.App.3d 403, 179 Ill. Dec. 653, 606 N.E.2d 485, 489 (1992) (refusing access to public records); *Att'y Grievance Comm'n of Md. v. Mininsohn,* 380 Md. 536, 846 A.2d 353, 369 (2004) (attorney discipline); *Suburban Hosp., Inc. v. Md. Health Res. Planning Comm'n,* 125 Md.App. 579, 726 A.2d 807, 814–15 (1999), *vacated as moot* 364 Md. 353, 772 A.2d 1239, 1240 (2001) (open meeting laws).

**21.** We have noted that the third and fourth issues in a civil contempt proceeding—whether the person accused of contempt actually violated the order and whether the violation was willful—are factual issues. Accordingly, in cases involving indirect contempt, the parties should ordinarily be afforded a hearing unless the facts are not in dispute or the alleged contemner desires to offer no defense. It is generally the prerogative of the court issuing an order to determine whether a party is in contempt of that order. *United States v. Shipp,* 203 U.S. 563, 573, 27 S.Ct. 165, 51 L.Ed. 319 (1906); *State v. Gray,* 46 S.W.3d 749, 750 (Tenn.Ct.App.2000). However, the jurisdiction of the Court of Appeals, like the jurisdiction of this Court, is appellate only, *Duncan v. Duncan,* 672 S.W.2d 765, 767 (Tenn.1984); Tenn.Code Ann. § 16–4–108(a)(1) (1994), and we have previously acknowledged that appellate courts are poorly equipped to handle evidentiary hearings. *See Doe v. Bd. of Prof'l Responsibility,* 104 S.W.3d at 474. *See also Sierra v. Sierra,* 505 So.2d

After determining that a person has willfully violated a lawful and sufficiently clear and precise order, the court may, in its discretion, decide to hold the person in civil contempt. *See Robinson v. Air Draulics Eng'g Co.*, 214 Tenn. 30, 37, 377 S.W.2d 908, 912 (1964). The court's decision is entitled to great weight. *Hooks v. Hooks*, 8 Tenn. Civ.App. (Higgins) 507, 508 (1918). Accordingly, decisions to hold a person in civil contempt are reviewed using the abuse of discretion standard of review. *Hawk v. Hawk*, 855 S.W.2d 573, 583 (Tenn.1993); *Moody v. Hutchison*, 159 S.W.3d 15, 25–26 (Tenn.Ct.App.2004). This review-constraining standard [22] does not permit reviewing courts to substitute their own judgment for that of the court whose decision is being reviewed. *Williams v. Baptist Mem'l Hosp.*, 193 S.W.3d 545, 551 (Tenn.2006); *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn.2001).

An abuse of discretion occurs when a court strays beyond the framework of the applicable legal standards or when it fails to properly consider the factors customarily used to guide that discretionary decision. *State v. Lewis*, 235 S.W.3d 136, 141 (Tenn.2007). Discretionary decisions must take the applicable law and relevant facts into account. *Ballard v. Herzke*, 924 S.W.2d 652, 661 (Tenn.1996). Thus, reviewing courts will set aside a discretionary decision only when the court that made the decision applied incorrect legal standards, reached an illogical conclusion, based its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the complaining party. *Mercer v. Vanderbilt Univ.*, 134 S.W.3d 121, 131 (Tenn.2004); *Perry v. Perry*, 114 S.W.3d 465, 467 (Tenn. 2003).

### IV.

No issue has been raised on this appeal regarding the power of the Court of Appeals to exercise contempt power or the lawfulness of the May 17, 2005 stay order.[23] Thus, the pivotal question is whether the May 17, 2005 order clearly, specifically, and unambiguously prohibits the parties in *Stratienko v. Chattanooga–Hamilton County Hospital Authority* and their lawyers from filing a petition under Tenn.Code Ann. § 10–7–505(a) to gain access to public records belonging to the Hospital Authority. Mr. Konvalinka and Ms. Lawrence insist that the stay order did not clearly prohibit the filing of a

---

432, 434 (Fla.1987) (appellate courts are not equipped to conduct evidentiary hearings and, therefore, could appoint a commissioner to take evidence and report back to court); *Bivins v. Bivins*, 709 S.W.2d 374, 376 (Tex. App.1986) (an appellate court has neither the personnel nor the facilities to conduct evidentiary hearings in contempt matter); *State ex rel. Walker v. Giardina*, 170 W.Va. 483, 294 S.E.2d 900, 908 (1982) (transferring criminal contempt proceeding to a specially-appointed circuit judge). Therefore, should a contempt hearing be required in a matter before an appellate court, the court should make arrangements for the receipt of evidence. *See Doe v. Bd. of Prof'l Responsibility*, 104 S.W.3d at 474 (approving the use of a special master in contempt proceedings filed in this Court stemming from a violation of the Supreme Court rule). When the allegedly contemptuous act involves a filing in a trial court, as it does in this case, the appellate court should remand the case to the trial court with a request to conduct a hearing and make findings of fact regarding the contemptuous conduct.

**22.** *Johnson v. John Hancock Funds*, 217 S.W.3d 414, 425 (Tenn.Ct.App.2006).

**23.** The Court of Appeals, having granted Dr. Stratienko's Tenn. R.App. P. 9 application for permission to appeal, clearly had jurisdiction over the subject matter of the appeal and the parties. Mr. Konvalinka and Ms. Lawrence, as Dr. Stratienko's attorneys of record, were both officers of the court and persons for the purpose of Tenn.Code Ann. § 29–9–102(3).

separate petition for access to public records. The Hospital Authority argues that the stay order prevents the filing of the separate action and that, in any event, the filing of the action violates the spirit of the stay order. Mr. Konvalinka and Ms. Lawrence have the better argument.

The May 17, 2005 order stayed "[a]ll proceedings below, including the administrative hearing currently scheduled for June 2, 2005." Thus, we must decide whether the inclusion of the phrase "all proceedings below" is broad enough to include separate proceedings under Tenn. Code Ann. § 10–7–505(a) to obtain public records. We hold that it does not for two reasons—one textual and the other based on the central importance of providing access to public records.

 Orders, like other written instruments, should be enforced according to their plain meaning. *See Bob Pearsall Motors, Inc. v. Regal Chrysler–Plymouth, Inc.*, 521 S.W.2d 578, 580 (Tenn.1975). Thus, courts called upon to interpret orders should construe the language in the order in light of its usual, natural, and ordinary meaning. *See Staubach Retail Servs.-Southeast, LLC v. H.G. Hill Realty Co.*, 160 S.W.3d 521, 526 (Tenn.2005); *Planters Gin Co. v. Fed. Compress & Warehouse Co.*, 78 S.W.3d 885, 889–90 (Tenn.2002). If the language in an order is clear, then the literal meaning of the language in the order controls. *See Allstate Ins. Co. v. Watson*, 195 S.W.3d 609, 611 (Tenn.2006); *Teter v. Republic Parking Sys., Inc.*, 181 S.W.3d 330, 342 (Tenn. 2005). Litigants are entitled to rely on the reasonable interpretation of orders, and the use of the "plain and ordinary meaning" standard to interpret orders assures that litigants will be treated fairly. *See Turman v. Boleman*, 235 Ga.App. 243, 510 S.E.2d 532, 534 (1998); *Campen v. Featherstone*, 150 N.C.App. 692, 564 S.E.2d 616,

619 (2002); *see also State v. Phillips*, 138 S.W.3d at 229–30.

Although somewhat antiquated, the phrases "proceedings below," "court below," and other similar phrases are still commonly used by lawyers and judges. The adjective "below" limits the meaning of these phrases to the lower court and the proceedings in the lower court. *See A Dictionary of Modern Legal Usage* 103; *see also* Ballentine's Law Dictionary 129 (3d ed.1969); Black's Law Dictionary 164 (8th ed.2004); 1 Bouvier's Law Dictionary 335 (3d rev.1914). The "court below" is the lower court through which the case initially passed. *Holliday & Wyon Co. v. O'Donnell*, 44 Ind.App. 647, 90 N.E. 24, 25 (1909); *see also Going v. Schnell*, 6 Ohio Dec.Reprint 69, 6 Ohio Dec.Reprint 932, 1880 WL 6799, at *1, 1880 Ohio Misc. LEXIS 32, at *5 (Ohio Dist. Ct. June 1880) (noting that the court below is the tribunal that decided the controversy in the first instance). Thus, the phrase "proceedings below" refers to the proceedings in the lower court from which an appeal has been taken.

Based on the customary meaning of "proceedings below," we have determined that the Court of Appeals' May 17, 2005 order, by its clear terms, applies only to the proceedings pending in the Circuit Court for Hamilton County in *Stratienko v. Chattanooga–Hamilton County Hospital Authority* and the administrative proceedings involving Dr. Stratienko's medical staff privileges that had been scheduled on June 2, 2005. The stay order did not clearly and unambiguously apply to separate proceedings under Tenn.Code Ann. § 10–7–505(a) to obtain public records being held by the Hospital Authority. Thus, Mr. Konvalinka and Ms. Lawrence could reasonably have believed that the stay order did not prevent them from filing their

own petition under Tenn.Code Ann. § 10–7–505(a) for access to public records.

Because the May 17, 2005 order did not clearly and unambiguously prohibit petitions pursuant to Tenn.Code Ann. § 10–7–505(a), it cannot provide the basis for holding Mr. Konvalinka and Ms. Lawrence in civil contempt for filing their petition seeking access to public records. The language of the order prevents a finding of willful disobedience on the part of either Mr. Konvalinka or Ms. Lawrence because they could have believed reasonably that the order did not extend to separate actions under Tenn.Code Ann. § 10–7–505(a). Accordingly, the Court of Appeals' decision to hold Mr. Konvalinka and Ms. Lawrence in civil contempt must be reversed because it is inconsistent with the applicable legal standards and because it lacks evidentiary support.

Our decision to reverse the judgment of civil contempt is based, as it must be, upon the language of the May 17, 2005 stay order. We are mindful, however, that both the trial court and Court of Appeals were troubled by Mr. Konvalinka and Ms. Lawrence's apparent "end run" around the spirit of the stay order. While this case does not present us with the opportunity to define the parameters of the public records request statutes, it is evident that when the public's access to public records is at issue, the courts should take great care to draft their orders with precision to avoid unnecessarily or inadvertently impeding access to the public records.

Providing access to public records promotes governmental accountability by enabling citizens to keep track of what the government is up to. *Nat'l Archives & Records Admin. v. Favish,* 541 U.S. 157, 171–72, 124 S.Ct. 1570, 158 L.Ed.2d 319 (2004); *Memphis Publ'g Co. v. Cherokee Children & Family Servs., Inc.,* 87 S.W.3d 67, 74–75 (Tenn.2002). Recognizing the importance of providing the public access to governmental records, the Tennessee General Assembly has enacted statutes that clearly favor the disclosure of public records. *Tennessean v. Elec. Power Bd.,* 979 S.W.2d 297, 305 (Tenn.1998); *Swift v. Campbell,* 159 S.W.3d 565, 570 (Tenn.Ct. App.2004). These statutes contain a presumption that the records listed in Tenn. Code Ann. § 10–7–301(6) (Supp.2007) and Tenn.Code Ann. § 10–7–503 are to be open to the public, *State v. Cawood,* 134 S.W.3d 159, 165 (Tenn.2004), and they direct the courts to construe the statutes broadly to assure the "fullest possible access" to public records. Tenn.Code Ann. § 10–7–505(d). Thus, unless it is clear that a record or class of records is legally exempt from disclosure, the requested record must be produced. *Memphis Publ'g Co. v. City of Memphis,* 871 S.W.2d 681, 684 (Tenn. 1994).

It may very well be that the General Assembly neither intended nor anticipated that the public records statutes they enacted would be used by persons litigating with government entities to obtain records that might not be as readily available through the rules of discovery.[24] *Swift v. Campbell,* 159 S.W.3d at 576. However, at present, neither the discovery rules nor the public records statutes expressly limit or prevent persons who are in litigation

---

**24.** Regarding the Federal Freedom of Information Act, the United States Supreme Court has stated explicitly that, although the Act was not intended to be used as a discovery tool, one's status as a litigant neither diminishes nor enhances the right to public information. *NLRB v. Robbins Tire & Rubber Co.,* 437 U.S. 214, 242, 98 S.Ct. 2311, 57 L.Ed.2d 159 (1978). The controlling question is not who requests the information but whether the information ought to be public. *U.S. Dept. of Justice v. Reporter's Comm. for Freedom of the Press,* 489 U.S. 749, 771–72, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989).

with a government entity or who are considering litigation with a government entity from filing petitions under Tenn.Code Ann. § 10–7–505(a) seeking access to public records relevant to the litigation. A growing number of courts, construing public records statutes similar to ours, have decided that persons should not be denied access to public records solely because they are involved, or may be involved, in litigation with a governmental entity.[25]

We have already concluded that Mr. Konvalinka and Ms. Lawrence should not have been held in civil contempt because the plain language of the May 17, 2005 order staying "all proceedings below" was not broad enough to apply to separate actions under Tenn.Code Ann. § 10–7–505(a) seeking access to public records. Therefore, this appeal does not provide an appropriate vehicle to determine whether persons who are in litigation with a governmental entity can be prevented from using the public records statutes to obtain information relevant to the litigation. The resolution of that important issue must await another day.

## V.

We reverse the judgment finding Mr. Konvalinka and Ms. Lawrence in civil contempt for violating the May 17, 2005 stay order and remand the case to the Court of Appeals with directions to dismiss the petition for contempt filed by the Hospital Authority with prejudice. We tax the costs to the Chattanooga–Hamilton County

Hospital Authority for which execution, if necessary, may issue.

**25.** *See, e.g., Leucadia, Inc. v. Applied Extrusion Techs., Inc.,* 998 F.2d 157, 167–68 (3d Cir.1993); *Jackson v. First Fed. Sav. of Ark.,* 709 F.Supp. 887, 889 (E.D.Ark.1989); *Bolm v. Custodian of Records of the Tucson Police Dep't,* 193 Ariz. 35, 969 P.2d 200, 204–05 (Ariz.Ct.App.1998); *Kentner v. Ind. Pub. Employers' Plan, Inc.,* 852 N.E.2d 565, 575 (Ind. Ct.App.2006); *Ky. Lottery Corp. v. Stewart,* 41 S.W.3d 860, 863–64 (Ky.Ct.App.2001); *Taylor v. Lansing Bd. of Water & Light,* 272 Mich. App. 200, 725 N.W.2d 84, 87–88 (2006); *N.J. Builders Ass'n v. N.J. Council on Affordable Hous.,* 390 N.J.Super. 166, 915 A.2d 23, 32 (2007); *M. Farbman & Sons, Inc. v. N.Y. City Health & Hosps. Corp.,* 62 N.Y.2d 75, 476 N.Y.S.2d 69, 464 N.E.2d 437, 438–39 (1984); *Cavey v. Walrath,* 229 Wis.2d 105, 598 N.W.2d 240, 243 n. 4 (Wis.Ct.App.1999).