# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
March 5, 2013 Session

## STATE OF TENNESSEE EX REL. KATHLENE WALDO v. JENNIFER WALDO

**Appeal from the Juvenile Court for Roane County**
**No. 19571-JV      Dennis W. Humphrey, Judge**

_____

**No. E2011-02677-COA-R3-CV - Filed April 2, 2013**

_____

This is an appeal by a mother from the juvenile court's judgment finding her in civil contempt for failure to pay child support and incarcerating her until she paid $400 toward the arrearage to purge the contempt. Finding the evidence inadequate to support a finding that the mother had the ability to pay child support when it was due or that she had the ability to pay $400 at the time of the hearing in order to purge the sentence, we reverse.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court**
**Reversed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., P.J., and THOMAS R. FRIERSON, II, J., joined.

Mark N. Foster, Rockwood, Tennessee, for the appellant, Jennifer Waldo.

Robert E. Cooper, Jr., Attorney General & Reporter, and Warren Jasper, Senior Counsel, Nashville, Tennessee, for the appellee, State of Tennessee ex rel. Kathlene Waldo.

**OPINION**

Just after Jennifer Waldo ("Mother") gave birth to another child in January 2011, the State filed a petition for contempt relating to Mother's two older children, who at the time were in the custody of Mother's mother, Kathlene Waldo.[1] A hearing on the contempt petition was scheduled for October 12, 2011, at which time the Child Support Magistrate ("the Magistrate") discovered that Mother had not been served with the State's petition.

---

[1]Mother's brief relates that her mother lost custody of the older children due to drug problems. By suggestion of death the court was notified that Kathlene Waldo passed away on November 10, 2012.

Upon the petition being served on Mother in court and the Magistrate advising her regarding the issue of contempt, its consequences, and her right to an attorney, the hearing was continued for a month. Mother appeared at the rescheduled hearing on November 10, 2011,[2] again without an attorney. The Magistrate did not appoint counsel to assist Mother; rather, he proceeded with the hearing.

Mother testified that she had not paid her child support because she was unemployed and homeless. She related that she had been unable to find a job because employers required a driver's license, and hers had been stolen. Mother contended that she was unable to replace the license because she did not have the $8 fee. During the hearing, the State put on proof addressing Mother's child support payment history and the arrearage calculation. While cross-examining Mother, the State did not ask, and Mother did not discuss, how much money she had or what assets she could secure to pay her child support when it became due. Mother also did not testify regarding how much money or assets she had at the time of the hearing that could be utilized to pay her child support arrearage.

At the conclusion of the proof, the Magistrate did not inquire about how much money or what assets Mother had at that time that could be utilized to pay the child support arrearage. Instead, he completed his order/findings and recommendations, finding Mother in willful contempt and sentencing her to be incarcerated until she paid a purge amount of $400. The State was awarded a judgment of $4,912 for child support arrearages.

The Magistrate orally explained to Mother that she had a right to a confirmation hearing and should request one if she disagreed with his ruling, stating as follows: "[Y]ou have a right to a confirmation hearing before a Judge of the Roane County Juvenile Court. At the confirmation hearing, the burden would be on you to show where I have erred in fact or law. You would want a confirmation hearing if you disagree with my ruling. Do you want a confirmation hearing?" He did not ask Mother whether she wanted an attorney to be appointed to advise her regarding the effect of the civil contempt finding or to assist her in determining whether to request a confirmation hearing. Mother responded that she did not want a confirmation hearing and that she planned to surrender her parental rights to her mother. The Magistrate informed Mother that surrendering her parental rights would not affect her child support obligation unless her mother adopted the children.

Despite Mother's statements demonstrating her lack of understanding of the relationship between the surrender of parental rights, the contempt finding, and the confirmation hearing, the Magistrate did not further address whether Mother understood the

_____

[2]By the time of the hearing in November 2011, Mother had surrendered her parental rights to the child born in January 2011, but not to the two older children.

consequences of her decision to decline a confirmation hearing. She was not asked to and did not make any written waiver of her right to a confirmation hearing.[3]

After the November 10, 2011 hearing, Mother was immediately incarcerated. The Magistrate's ruling was confirmed by the Juvenile Court Judge on November 16, 2011. Within one week of the hearing, Mother submitted two documents to her jailers requesting that she be brought back before the trial court and appointed an attorney. Mother did not appear again in court until December 5, 2011, at which time she was brought before the Juvenile Court Judge in his capacity as General Sessions Judge for an unrelated proceeding. At that time, Mother requested the appointment of counsel in the child support matter, was found to be indigent, and was appointed counsel. Within days, Mother filed a motion to set aside the contempt order and to hold a confirmation hearing. Additionally, a notice appealing both the November 10 and November 16, 2011, orders, and a motion for stay pending, were filed.

On December 15, 2011, a hearing was held before the Juvenile Court Judge. Mother again testified that prior to the hearing she had been homeless and unemployed. She also related that at the time of the hearing, she did not have $400. Mother, who had been in jail 35 days on the contempt finding at that point, testified that she was not being stubborn or otherwise willfully refusing to comply with the court's order, and that if she had the $400 to pay to get out of jail, she would have done it. Instead, Mother noted that she was left only to hope that her mother or a church was going to raise the money. The State did not rebut Mother's testimony.

Mother further explained to the trial court her previous lack of understanding of the confirmation hearing process, and requested that the Juvenile Court Judge hold a confirmation hearing and reverse the Magistrate's order jailing her until she paid $400 because she did not have the money. The Juvenile Court Judge, however, denied Mother any relief and returned her to jail. Mother filed a Rule 7 motion seeking a review of the juvenile court's denial of her motion to stay pending appeal. On December 20, 2011, we granted the motion to stay.

_____

[3]Mother later testified -- without any contrary evidence being introduced by the State -- that she did not understand at the time of the November 10, 2011, hearing that if she did not request a confirmation hearing, she would have no other way to appeal or seek reversal of the order that she be jailed indefinitely until she paid $400. She also did not understand that she could request an attorney to be appointed to assist her in determining whether to request a confirmation hearing.

## II. ISSUES

We restate the primary issue[4] as follows: Whether the trial court erred in failing to determine whether or not Mother had the ability to purge herself of the civil contempt.

## III. STANDARD OF REVIEW

Findings of civil contempt are reviewed under an abuse of discretion standard. *Konvalinka v. Chattanooga-Hamilton County Hosp. Auth.*, 249 S.W.3d 346, 358 (Tenn. 2008); *Hawk v. Hawk*, 855 S.W.2d 573, 583 (Tenn. 1993); *Moody v. Hutchison*, 159 S.W.3d 15, 25-26 (Tenn. Ct. App. 2004). Reviewing courts will set aside a discretionary decision only when the court that made the decision applied incorrect legal standards, reached an illogical conclusion, based its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the complaining party. *Mercer v. Vanderbilt Univ.*, 134 S.W.3d 121, 131 (Tenn. 2004); *Perry v. Perry*, 114 S.W.3d 465, 467 (Tenn. 2003).

We review the trial court's factual findings of civil contempt with a presumption of correctness unless the evidence preponderates otherwise pursuant to the standard contained in Rule 13(d) of the Tennessee Rules of Appellate Procedure. *Konvalinka,* 249 S.W.3d at 357.

## IV. DISCUSSION

As noted by the State, the trial court determined that Mother willfully disobeyed her

---

[4]The other issues raised by Mother are restated as follows:

a. Did the trial court err in entering on November 16, 2011, an order confirming the Magistrate's November 10, 2011, order, although the time to request a confirmation hearing had not elapsed.

b. Did the trial court err in refusing to set aside its November 16, 2011, order where there was unrebutted evidence that Mother was, during the time a confirmation hearing could have been requested, actively seeking from jail appointment of an attorney and re-consideration of the magistrate's November 10, 2011, decision, and did not understand how to request a hearing.

child support order by her failure to obtain a replacement driver's license for $8 in order to gain employment to pay her child support. The State admits, however, that it failed to present proof regarding Mother's ability -- at the time of the hearing -- to make her payments and to satisfy the purge amount set by the trial court.

Civil contempt is found "where a person refuses or fails to comply with an order of a court in a civil case[.]" *Sullivan v. Sullivan*, 137 S.W.2d 306, 307 (Tenn. 1939). Any punishment is meted out for the benefit of the party litigant. *Id.* To find civil contempt in a case, the plaintiff first must establish that the defendant has failed to comply with a court order. *Chappell v. Chappell*, 261 S.W.2d 824, 831 (Tenn. 1952). For the trial court to find that a failure to comply with an order was contemptuous, the court must first determine that the defendant had the present ability to pay and determine that the failure was willful. *Ahern v. Ahern*, 15 S.W.3d 73, 79 (Tenn. 2000). The determination of whether the defendant violated the order of the court and whether the violation was willful are findings of fact. *Konvalinka*, 249 S.W.3d at 357. In order to be imprisoned for civil contempt, the defendant must have the ability to perform the act she is required to perform to secure her release. *Ahern*, 15 S.W.3d at 79. Thus, the court must receive evidence at the hearing regarding what -- at that time -- the defendant had the present ability to do to bring herself in compliance with the court's prior order. *Ahern*, 15 S.W.3d at 79. Where the trial court does not determine the defendant's ability to pay at the time of the hearing but nevertheless orders the defendant incarcerated, the court "exceed[s] the authority granted to [it] under Tennessee Law." *Poole v. City of Chattanooga*, No. E1999-01965-COA-R3-CV, 2000 WL 310564, at *5 (Tenn. Ct. App. Mar. 27, 2000).

The record contains no proof regarding Mother's ability to pay at the time of the contempt hearing. Neither the State nor the court asked Mother at the hearing "how much money she had at the time of the November 10, 2011 contempt hearing that could be utilized to pay her child support arrearage." The evidence therefore preponderates against the trial court's findings. We conclude that the trial court abused its discretion in holding Mother in contempt. Consideration of the remaining issues asserted by Mother is pretermitted by our ruling.

## V. CONCLUSION

The judgment of the trial court holding Mother in contempt and incarcerating her is reversed and the case remanded. Costs are assessed to the State of Tennessee, ex rel. Kathlene Waldo.

_____

JOHN W. McCLARTY, JUDGE