# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
February 25, 2014 Session

## STATE OF TENNESSEE v. WILLIAM COLE COMER

**Appeal from the Criminal Court for Knox County**
**No. 91490     Steven Sword, Judge**

---

**No. E2013-00906-CCA-R3-CD-FILED-MARCH 26, 2014**

---

The defendant, William Cole Comer, appeals his Knox County Criminal Court jury convictions of driving under the influence, failure to stop, and possession of drug paraphernalia, and his bench conviction of violating the implied consent law, claiming that the trial court erred by permitting the arresting officer to testify as an expert witness for purposes of admitting a cocaine field test. Discerning no error, we affirm.

**Tenn. R. App. P. 3; Judgments of the Criminal Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the Court, in which D. KELLY THOMAS, JR., and JEFFREY S. BIVINS, JJ., joined.

Robert C. Edwards, Assistant District Public Defender, for the appellant, William Cole Comer.

Robert E. Cooper, Jr., Attorney General and Reporter; Clarence E. Lutz, Assistant Attorney General; Randall E. Nichols, District Attorney General; and Kenneth F. Irvine, Jr., Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The Knox County Grand Jury charged the defendant with three alternative counts of driving under the influence ("DUI") of an intoxicant, a drug, or both, and one count each of violating the implied consent law, failure to stop at a stop sign, and possession of drug paraphernalia. The trial court conducted a jury trial in September 2012.

At trial, Knoxville Police Department ("KPD") Officer Joel Ascencio testified that he had worked for the KPD for almost eight years and that his duties included patroling the Mechanicsville and Western Heights areas of Knoxville. Officer Ascencio stated that,

during his six months at the police academy, he completed 40 hours of course work on detection of DUI offenders in addition to course work on drug detection. Officer Ascencio estimated that he had made "a couple hundred" DUI stops during his eight years with the KPD. With respect to testing for controlled substances, Officer Ascencio stated that he had received training on the field test kits provided by the KPD and that he had administered "thousands" of field tests over the years. When asked how the field test kits operate, Officer Ascencio explained as follows:

> You want to get the controlled substance. You don't need a whole lot, just a speck, a gram – not even a gram, just a – just a minute amount. You put it inside this glass capsule that has the chemical inside. You put the lid back on. You break the bottom part, shake it up. If it's a positive for, in this case, cocaine based type material, it'll turn blue. If it does not turn blue, you break the cap part on the top, shake it up again. It's more – it breaks it down even more than the first part would. If it turns blue, then it's a cocaine based type material. If it doesn't, then it's not.

Officer Ascencio confirmed that the only skill needed to read the test results is the ability to discern the color, which he clarified is "bright blue."

Defense counsel, outside the presence of the jury, conducted a voir dire examination of Officer Ascencio regarding his training on the field test kits. Officer Ascencio first used one of the kits shortly after finishing at the police academy. Officer Ascencio admitted that he had never received any training from the manufacturer of the test kit and that he had never received a certificate confirming his training, acknowledging that his experience with the test stems from the hundreds of times that he had administered it. When questioned by the State, Officer Ascencio confirmed that instructions for the test were printed on the box and that he followed the instructions every time. Officer Ascencio testified that, although the way in which the chemicals are added to the test had changed a bit over the years, the fundamental operation of the test had remained the same. Based on this testimony, the trial court ruled that Officer Ascencio's experience was sufficient to permit him to testify about his administration of the field test kit.

With respect to the arrest in question, Officer Ascencio testified that he was on patrol in the Mechanicsville area on April 25, 2008, and he stated that he typically encountered crimes in that area involving violence and drugs, specifically crack cocaine. Just prior to 11:00 p.m., Officer Ascencio observed, at the intersection of Dora Street and Douglas Avenue, a two-tone Dodge pickup truck that failed to properly observe the Dora

Street stop sign. After the vehicle turned onto Douglas Avenue without first making a complete stop, Officer Ascencio began to initiate a traffic stop. Before stopping the vehicle, Officer Ascencio overheard the vehicle's driver call out to an African-American man walking on Douglas Avenue that he was "looking for some drugs."

When Officer Ascencio activated his blue lights, the vehicle pulled over, and the officer approached, finding only the defendant inside the truck. Officer Ascencio explained to the defendant that he had stopped him for running the stop sign and inquired as to why the defendant had asked the man on the street about purchasing drugs. Officer Ascencio testified that the defendant never denied asking the man about buying drugs and that the defendant "acknowledge[d] there's a drug thing going on." During his conversation with the defendant, the officer noticed that the defendant had "red bloodshot eyes," and he detected the smell of an alcoholic beverage when the defendant was speaking, although he did not recall that the defendant's speech was slurred. The defendant admitted having consumed "one beer." The defendant had an out-of-state driver's license, and Officer Ascencio recalled that the defendant claimed to live "near Whittle Springs," which the officer testified was "a pretty good distance" from Mechanicsville. Officer Ascencio noticed approximately $40 in cash "in plain view" on either the vehicle's dash or in the front seat of the vehicle, and the officer testified that, based on his experience, a rock of crack cocaine costs $20 to $40, depending on its size.

Officer Ascencio asked the defendant to step out of his vehicle to perform some field sobriety tests, and the defendant complied. Prior to administering the field sobriety tests, Officer Ascencio searched the defendant for weapons and drugs, and he discovered, on the defendant's person, a pill bottle which contained "some white powder residue" and a "push rod" which is used "to hold your crack rock in your crack pipe while you smoke it." The defendant claimed that the pill bottle had contained Advil. Although Officer Ascencio did not find a crack pipe on the defendant's person, the officer asked the defendant about a pipe, and the defendant responded "something to the fact of he [did] not have it with him."

Using a field test kit, Officer Ascencio tested the white powder residue, and the residue tested positive for "cocaine based material." Because only residue existed, Officer Ascencio was unable to charge the defendant with simple possession. Officer Ascencio confirmed that Advil or any other over-the-counter medication that had been contained in the pill bottle would not have caused the test to turn blue, stating that "[i]t's got to have some kind of cocaine in it."

Officer Ascencio conducted three field sobriety tests. On the "walk-and-turn" test, Officer Ascencio testified that the defendant started the test too soon, failed to turn

properly, and raised his arms from his sides. During the "one-leg stand" test, the defendant "swayed, he raised his arms, and he kept putting his foot down till finally he just stopped." Officer Ascencio testified that the defendant failed both of these tests. Wanting to give the defendant "a fair shake," Officer Ascencio conducted a "finger count" test, which the defendant also failed. At that time, Officer Ascencio believed the defendant to be under the influence of some form of intoxicant or controlled substance, and, after conducting a fruitless search of the defendant's vehicle, he placed him under arrest for DUI, failure to stop, and possession of drug paraphernalia. Officer Ascencio then read the implied consent form to the defendant and asked him to submit to a blood test, which the defendant refused. Through Officer Ascencio, the State introduced the video from Officer Ascencio's cruiser showing the traffic stop and the defendant's performance of the field sobriety tests.

On cross-examination, Officer Ascencio admitted that, in the narrative portion of his arrest report, he wrote that he heard the defendant "talking to a black man walking west on Douglas," but he did not write anything about the defendant asking about drugs. Officer Ascencio agreed that the defendant was cooperative during the traffic stop and his ensuing arrest.

With this evidence, the State rested its case. Following the trial court's denial of the defendant's motion for judgments of acquittal and a *Momon* colloquy, *see Momon v. State*, 18 S.W.3d 152, 161-62 (Tenn. 1999), the defendant elected to testify and to present proof.

Tim Coffey, the defendant's nephew, testified that he had spent April 25, 2008, working with the defendant at Mr. Coffey's father's mill. Mr. Coffey stated that the defendant had given him a ride both to and from work that day. When they left work in Clinton around 6:30 p.m. to 7:00 p.m., it took approximately 45 minutes to an hour to return to Mr. Coffey's house in Strawberry Plains. On the way to Mr. Coffey's house, the defendant stopped at a store so that Mr. Coffey could purchase a six-pack of beer. Upon arrival at Mr. Coffey's residence, the two men ordered a pizza. Mr. Coffey testified that he drank three or four beers and that the defendant consumed "part of one" beer. He recalled that the defendant only drank part of the beer because he "poured the rest of it out when [the defendant] left." Mr. Coffey estimated that the defendant left his house at approximately 10:00 p.m. to 10:30 p.m. Mr. Coffey testified that the defendant was sober when he left Mr. Coffey's house and that the defendant did not consume any alcohol or use any drugs while at work earlier that day.

The defendant testified that he was 58 years old and that he had moved to Knoxville to live and work with his brother in 2007. The defendant stated that, on April 25, he had spent the day working and that he drove Mr. Coffey home, arriving between 7:00 p.m.

and 8:00 p.m. The defendant confirmed that he and Mr. Coffey had shared a pizza and testified that he "drank about three quarters of a beer," explaining, "I'm really not a big beer drinker." The defendant stated that he watched a movie with Mr. Coffey and that he then left to drive home. Because he was unfamiliar with the area and was tired, the defendant missed his exit on the interstate and became lost. The defendant testified that he was searching for a way to get back to a familiar street when he was stopped by Officer Ascencio. The defendant admitted calling out to a black man on the street, but he claimed that he was asking for directions.

The defendant denied that the object Officer Ascencio found in his possession was a "push rod," explaining that it was a piece of a coat hanger from his brother's warehouse that he had noticed in the front seat of the truck. The defendant admitted that he had cash in the console of the truck, but he did not know why he had put it there. The defendant denied owning a crack pipe, and, although he admitted using powder cocaine "in [his] younger days," the defendant denied ever using crack cocaine. With respect to the white powder residue in the pill bottle, the defendant stated that he used the pill bottle to hold Tylenol. He could not explain why the residue in the bottle tested positive for cocaine. The defendant testified that he had difficulty with the one-leg stand test because of health problems and stated that his health issues necessitated multiple surgeries in the months following his arrest. The defendant stated that his eyes were usually red and bloodshot, and he denied drinking alcoholic beverages on a regular basis.

On cross-examination, the defendant admitted that, in spite of his health problems, he was still able to work without any restrictions prior to and on April 25, 2008. The defendant acknowledged that Officer Ascencio stopped him in a dark, residential area and that, when the officer asked if he was in the area to purchase drugs, he responded, "Have before, but not now."

Based on this evidence, the jury convicted the defendant as charged of three counts of DUI, which the trial court merged into a single conviction, one count of failing to stop, and one count of possession of drug paraphernalia. The trial court also found the defendant guilty of an implied consent violation. Following a sentencing hearing, the trial court imposed, for the DUI conviction, a sentence of 11 months and 29 days to be served as 48 hours' incarceration followed by probation, and a $1,500 fine. For the failure to stop and the possession of drug paraphernalia convictions, the trial court imposed 30 days and 11 months, 29 days of probation, respectively, and ordered that the sentences be served concurrently to the defendant's DUI sentence. The trial court also ordered the defendant's driver's licence revoked for a period of one year.

Following the denial of his timely but unsuccessful motion for new trial, the

-5-

defendant filed a timely notice of appeal. In this appeal, the defendant contends only that the trial court erred by permitting Officer Ascencio to testify to the field test results because he was not properly qualified as an expert. We disagree.

The admissibility of expert testimony is governed by Rules 702 and 703 of the Tennessee Rules of Evidence. *See generally McDaniel v. CSX Transp., Inc.*, 955 S.W.2d 257 (Tenn. 1997). Rule 702 addresses the need for expert testimony and the qualifications of the expert: "If scientific, technical, or other specialized knowledge will substantially assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise." Tenn. R. Evid. 702. Rule 703 focuses on the reliability of expert opinion testimony. Generally, the admissibility of expert testimony is a matter entrusted to the sound discretion of the trial court, and there can be no reversal on appeal absent clear abuse of that discretion. *See State v. Scott*, 275 S.W.3d 395, 404 (Tenn. 2010); *State v. Copeland*, 226 S.W.3d 287, 301 (Tenn. 2007). "A trial court abuses its discretion when it applies incorrect legal standards, reaches an illogical conclusion, bases its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the complaining party." *Scott*, 275 S.W.3d at 404 (citing *Konvalinka v. Chattanooga-Hamilton County Hosp. Auth.*, 249 S.W.3d 346, 358 (Tenn. 2008)).

In the instant case, Officer Ascencio testified that he had been trained to operate the field test kits and that he had administered "thousands" of field tests over the years. Officer Ascencio explained each step of the administration of the field test and confirmed that he followed the test instructions "each and every time" he administered the test. The trial court concluded that "based upon his experience he can testify as to actually conducting that, and what the color was certainly." We conclude that the trial court did not abuse its discretion by allowing Officer Ascencio to offer expert testimony about the administration of the field test and its results.

The defendant's challenge to the admissibility of the field test results apparently relates to the qualifications of the officer and not to the scientific validity of the test itself. The defendant contends that the admission of the field test was improper because no other evidence corroborated the field test results. In support of his argument, the defendant relies on *State v. Mikel Primm*, No. 01C01-9712-CC-00571 (Tenn. Crim. App., Nashville, Dec. 9, 1998), in which this court stated that "[i]f the state was relying totally upon the field test to establish that the suspected substance was in fact marijuana, we would be compelled to reverse [the conviction of possession] and remand for a new trial." *Id.*, slip op. at 5. In *Mikel Primm*, however, the State "concede[d] the prosecution failed to lay a proper foundation for [the officer's] testimony regarding the field test." *Id.*, slip op. at 4. Here, the defendant conducted a voir dire examination of Officer Ascencio regarding his training and

expertise on the field test, and the trial court found the officer's testimony sufficient to qualify him as an expert. The defendant also relies on *State v. Wade Payne*, No. W2010-01735-CCA-R3-CD (Tenn. Crim. App., Jackson, Jan. 17, 2012), in which this court concluded that a cocaine field test was properly admitted into evidence because, among other things, the officer testified "that he was certified to perform the test." *Id.*, slip op. at 7. Although Officer Ascencio admitted that he had never received a certificate to confirm his training, his description of the administration of the test was virtually identical to that provided by the "certified" officer in *Wade Payne*, *id.*, slip op. at 6-7, and, thus, we do not believe that the lack of a certificate rendered Officer Ascencio's testimony to be any less reliable given his training and experience.

Accordingly, we find no abuse of discretion in the trial court's decision to admit the expert testimony of Officer Ascencio, and, as such, the judgments of the trial court are affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE