IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs September 1, 2015

## STATE OF TENNESSEE v. TABITHA LYNN HUGHES

**Appeal from the Circuit Court for Tipton County
No. 7703    Joseph H. Walker, III, Judge**

**No. W2014-01849-CCA-R3-CD  -  Filed January 15, 2016**

The defendant, Tabitha Lynn Hughes, appeals her Tipton County Circuit Court jury conviction of driving under the influence, claiming that the trial court erred by denying her pretrial motion to dismiss based upon the State's failure to timely commence prosecution and by admitting certain evidence at trial. Discerning no error, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3; Judgment of the Circuit Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which ROGER A. PAGE and TIMOTHY L. EASTER, JJ., joined.

Claiborne H. Ferguson, Memphis, Tennessee, for the appellant, Tabitha Lynn Hughes.

Herbert H. Slatery III, Attorney General and Reporter; Tracy L. Alcock, Assistant Attorney General; D. Michael Dunavant, District Attorney General; and James Walter Freeland, Jr., Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

In July 2013, the Tipton County Circuit Court grand jury charged the defendant with one count of driving under the influence ("DUI") of an intoxicant, a drug, or both. The trial court conducted a jury trial in July 2014.

The State's proof at trial showed that Gary Allen Rose was driving in the Brighton area of Tipton County on May 9, 2012, and happened to be following a vehicle that was being driven erratically. After following the vehicle for approximately one and a half miles, Mr. Rose observed the motorist repeatedly cross the double-yellow lines and veer off each side of the roadway, narrowly avoiding a head-on collision with a large truck, before eventually driving into a ditch. Mr. Rose parked his vehicle and rushed to

the aid of the motorist, who was later identified as the defendant. Because the vehicle was tightly wedged in the ditch, Mr. Rose was unable to extricate the defendant from the vehicle and contacted 9-1-1. A law enforcement officer arrived on the scene a short time later and assisted Mr. Rose in freeing the defendant from her vehicle. Mr. Rose observed that the defendant was very emotional, was slurring her speech, and was "pretty much incoherent." Mr. Rose did not smell any alcohol on the defendant's breath, and he did not hear the defendant mention any prescription medications.

Lieutenant Kevin Williams with the Tennessee Highway Patrol arrived on the scene of the accident at approximately 3:14 p.m. At that time, the defendant had been loaded into an ambulance and was awaiting transport to the hospital. Lieutenant Williams assessed the defendant's condition and noted that she "seemed confused" and "seemed like she didn't know what was going on or why it was taking place." In response to questioning by Lieutenant Williams, the defendant provided a "list of prescription drugs" that she "had been taking and had taken that day." The defendant had all of the prescription medications with her, and Lieutenant Williams recalled that the defendant was taking oxycodone, oxaprozin, dilaudid, and oxycontin. The defendant told Lieutenant Williams that she had been trying to locate a physician's office when the accident occurred. While at the scene, Lieutenant Williams noticed that the defendant's pupils were "very dilated" and that the defendant was "incoherent and just lethargic." At the hospital, the defendant signed the implied consent form and submitted to a blood test.

Special Agent and forensic scientist Bethany McBride with the Tennessee Bureau of Investigation ("TBI") testified that she analyzed the blood sample obtained from the defendant. The sample was negative for the presence of alcohol, but it did reveal the presence of seven controlled substances, including an unspecified quantity of dihydrocodeinone and 0.53 micrograms of oxycodone. Agent McBride forwarded the blood sample to the TBI's Nashville crime laboratory for further testing.

TBI Special Agent and forensic scientist April Bramlage testified that she received the defendant's blood sample in the Nashville facility and conducted a more detailed analysis of it. Her analysis revealed 194.3 nanograms of diazepam, commonly known as Valium, and 32.8 nanograms of alprazolam, commonly known as Xanax. Agent Bramlage explained that the amounts detected were within the therapeutic range for their respective substances but that both have sedating effects that could impact an individual's ability to operate a motor vehicle. Agent Bramlage testified that the 0.53 micrograms per milliliter of oxycodone found in the defendant's blood were also within the therapeutic range for that substance but that the combination of taking this opiate with the two depressants would have a "[s]ynergistic effect":

Synergism means that it's not a one plus one. It's a one plus one is maybe four, an increased effect of both of them. . . . Those are central nervous system depressants all acting together, and they do have that synergism where a benzodiazepine and an opiate enhance the effect of each other.

Agent Bramlage opined that the combination of drugs in the defendant's system could have impacted her ability to operate a motor vehicle.

Through the testimony of Jodie Adams, custodian of medical records of Baptist Hospital, the State introduced into evidence a copy of the defendant's medical records from her emergency department visit on May 9, 2012. The records indicated that the defendant had sustained injuries to her face and back and that the defendant was "[s]lurring words," "appear[ed] drugged," and was "markedly inebriated/medicated."

With this evidence, the State rested. Following a motion for judgment of acquittal and a *Momon* colloquy, the defendant elected to testify.

The defendant, who has a doctorate in biology with concentrations in both biochemistry and toxicology, testified that she suffered from numerous medical conditions, including arachnoiditis, fibromyalgia, failed back syndrome, carpal tunnel syndrome, and diabetes and that she had been taking anti-anxiety and pain medications since June 2007. On May 9, 2012, she was driving from Memphis to Tipton County to see a pain specialist to whom she was referred by her primary care physician. The defendant stated that she took her medication exactly as prescribed at approximately 5:30 to 6:00 a.m. and that she ingested no other medication prior to her car accident that afternoon.

When the defendant arrived at the pain specialist's office for her 11:00 a.m. appointment, she realized that she was out of insulin. She then learned that the physician could not prescribe the pain medications that she was taking, and the defendant left. Using her cellular telephone, the defendant attempted to find another "pain doctor" in the area who could treat her. While she was searching for the physician's office, she "began to feel sick" and her "head was kind of spinning and [she] couldn't see very well." Believing that an animal had jumped in front of her car, the defendant swerved to avoid it and drove her vehicle off the road. The defendant explained that she "started bawling" and "went a little hysterical" when Mr. Rose appeared next to her wrecked vehicle because she was "really relieved" and was "in pain." The defendant testified that she took one Xanax pill in the ambulance on the way to the hospital because it was "time for

[her] to take one" but that she took no other medication until after she was discharged from the hospital later that evening.

On cross-examination, the defendant admitted to being addicted to pain medication and other drugs, stating that "[t]here's no way you could go through this many years of being on pain medication and not be somewhat . . . physiologically addicted to medication." The defendant admitted that she never mentioned problems with her blood sugar to Mr. Rose or law enforcement officers.

Based on this evidence, the jury convicted the defendant as charged of DUI. Following a sentencing hearing, the trial court imposed a sentence of 11 months and 29 days to be served as 60 hours' incarceration followed by probation.

Following the denial of her timely motion for new trial, the defendant filed a timely notice of appeal. In this appeal, the defendant contends that the trial court erred by refusing to dismiss the charge based upon the State's failure to timely commence prosecution and by permitting Agent McBride to testify as an expert witness on the pharmacological effects of medication. We will address both issues in turn.

*I. Commencement of Prosecution*

The defendant contends that the trial court should have dismissed the charge against her based upon the State's failure to commence prosecution within one year of the commission of the offense. The State asserts that the timely issuance of an arrest warrant tolled the statute of limitations. We agree with the State.

The defendant was convicted of the misdemeanor offense of DUI, first offense. *See* T.C.A. §§ 55-10-401, -402(a)(1)(A). Tennessee Code Annotated section 40-2-102 provides that "[e]xcept as provided in § 62-18-120(g) and subsection (b) of this section, all prosecutions for misdemeanors shall be commenced within the twelve (12) months after the offense has been committed." T.C.A. § 40-2-102(a). The purpose of this limitations period "is to protect a defendant against delay and the use of stale evidence and to provide an incentive for efficient prosecutorial action in criminal cases." *State v. Nielsen*, 44 S.W.3d 496, 499 (Tenn. 2001). Statutes of limitation are construed "liberally in favor of the criminally accused." *State v. Ferrante*, 269 S.W.3d 908, 911 (Tenn. 2008).

Tennessee Code Annotated section 40-2-104 provides that a prosecution is commenced by the following:

finding an indictment or presentment, the issuing of a

warrant, binding over the offender, by the filing of an information as provided for in chapter 3 of this title, or by making an appearance in person or through counsel in general sessions or any municipal court for the purpose of continuing the matter or any other appearance in either court for any purpose involving the offense.

T.C.A. § 40-2-104.  This section "provides for the commencement of a prosecution by several methods, 'all deemed to provide the defendant with sufficient notice of the crime.'" *Ferrante*, 269 S.W.3d at 914 (quoting *State v. Tait*, 114 S.W.3d 518, 522 (Tenn. 2003)).  "'A lawful accusation is an essential jurisdictional element of a criminal trial, without which there can be no valid prosecution.'" *Ferrante*, 269 S.W.3d at 914 (quoting *State v. Morgan*, 598 S.W.2d 796, 797 (Tenn. Crim. App. 1979)).  Our supreme court "has long recognized that, 'prior to formal accusation, [a] defendant's rights are protected by the statute of limitations.'" *Ferrante*, 269 S.W.3d at 914 (quoting *State v. Baker*, 614 S.W.2d 352, 354 (Tenn. 1981)).

Because the defendant was not indicted until July 2013, more than 12 months after the date of the offense, May 9, 2012, we must determine whether some other event occurred before the filing of the indictment that was sufficient to commence the prosecution in this case.  Lieutenant Williams issued a uniform citation to the defendant on May 9, 2012, and the Tipton County general sessions court issued an arrest warrant on May 15, 2012.  The plain language of Code section 40-2-104 provides five specific ways by which a prosecution may be commenced, and the issuance of a warrant, which occurred in the instant case, is among them.  Following the issuance of the warrant, the defendant's initial court appearance was scheduled for July 13, 2012.  For reasons that are not entirely clear from the record, the case was continued on at least four occasions before ultimately being bound over to the grand jury on June 21, 2013.

The defendant argues that the uniform citation issued on May 9 was an invalid charging instrument because it was unsworn and included no specific facts; however, the arrest warrant and not the uniform citation became the charging instrument in this case.  The arrest warrant was signed, sworn to, and contained specific facts detailing the basis for the warrant.  The defendant further argues that the arrest warrant was never served on the defendant.  This argument also misses the mark.  Code section 40-2-104 does not require that the arrest warrant be served for the commencement of prosecution, only that the warrant be *issued*.

The issuance of the May 15 arrest warrant commenced the prosecution of the defendant's DUI and was well within the one-year statute of limitations.  In consequence, the trial court properly denied the defendant's motion to dismiss the

indictment.

## *II. Expert Testimony*

The defendant next contends that the trial court erred by permitting Agent McBride to testify as an expert witness regarding the pharmacological properties of medication. Specifically, the defendant argues that Agent McBride did not possess sufficient qualifications to permit her to testify about the dosage and effects of the narcotics detected in the defendant's blood.

The admissibility of expert testimony is governed by Rules 702 and 703 of the Tennessee Rules of Evidence. *See generally McDaniel v. CSX Transp., Inc.*, 955 S.W.2d 257 (Tenn. 1997). Rule 702 addresses the need for expert testimony and the qualifications of the expert: "If scientific, technical, or other specialized knowledge will substantially assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise." Tenn. R. Evid. 702. Rule 703 focuses on the reliability of expert opinion testimony. Generally, the admissibility of expert testimony is a matter entrusted to the sound discretion of the trial court, and there can be no reversal on appeal absent clear abuse of that discretion. *See State v. Scott*, 275 S.W.3d 395, 404 (Tenn. 2010); *State v. Copeland*, 226 S.W.3d 287, 301 (Tenn. 2007). "A trial court abuses its discretion when it applies incorrect legal standards, reaches an illogical conclusion, bases its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the complaining party." *Scott*, 275 S.W.3d at 404 (citing *Konvalinka v. Chattanooga-Hamilton County Hosp. Auth.*, 249 S.W.3d 346, 358 (Tenn. 2008)).

In the instant case, the trial court permitted Agent McBride to testify as a "general" expert witness without specifying her area of expertise. During Agent McBride's direct examination, the prosecutor asked her to explain the significance of the amount of oxycodone detected in the defendant's blood. Defense counsel objected on the basis that the question was outside the scope of the agent's expertise, and the trial court allowed Agent McBride "to respond if she can." Before Agent McBride could fully answer the question, defense counsel again objected on the same basis, and the court overruled the objection. Agent McBride then responded that the level of oxycodone found in the defendant's blood was "a fairly good amount in what we normally see." Defense counsel then proceeded to conduct a thorough cross examination of Agent McBride. Following Agent McBride's testimony, Agent Bramlage testified as an expert witness, providing much more extensive testimony about the narcotics detected in the defendant's blood and their likely impact on the defendant's ability to operate a motor vehicle. Defense counsel accepted Agent Bramlage as an expert witness and lodged no

objections to her testimony.

We find no abuse of discretion in the trial court's decision to permit Agent McBride to testify as an expert witness. Agent McBride testified that she possessed a degree in chemistry and that she had spent 11 and a half years with the TBI analyzing blood for the presence of alcohol and drugs. Agent McBride testified that she had conducted 5,547 tests for alcohol analysis and "thousands" of tests for drug analysis.

Moreover, even if the trial court erred by permitting Agent McBride to testify as an expert without specifying the area of expertise and by allowing her to offer an opinion as to the amount of oxycodone in the defendant's blood, such evidence was admitted later through the testimony of Agent Bramlage, without objection. Thus, the defendant is unable to show that any potential error "more probably than not affected the judgment or would result in prejudice to the judicial process." Tenn. R. App. P. 36(b). The defendant is not entitled to relief on this issue.

*Conclusion*

For the foregoing reasons, we affirm the judgment of the trial court.

_____
JAMES CURWOOD WITT, JR., JUDGE